766 So.2d 615 (2000)
Cary James CROSBY, et ux., Plaintiffs-Appellants,
v.
William E. STINSON, Jr., Defendant-Appellee.
No. 33,628-CA.
Court of Appeal of Louisiana, Second Circuit.
August 23, 2000.
*616 Richard E. Hiller, Shreveport, Counsel for Appellants,
Thomas A. Wilson, Jr., Bossier City, Counsel for Appellee.
Before GASKINS, PEATROSS and KOSTELKA, JJ.
GASKINS, J.
The plaintiffs, Cary and Deborah Crosby, appeal from a judgment granting an exception of no cause of action in favor of the defendant, William Stinson, Jr. For the following reasons, we affirm.

FACTS
The Crosbys operate a business in Bossier City known as Crosby & Company Air Conditioning and Heating at 1010 Contractors Circle. The building at this site was owned by a succession estate, but the property to the front and rear of the building was owned by the defendant, Mr. Stinson. Mr. Crosby decided to purchase the building from the estate and entered into negotiations with Mr. Stinson for the acquisition of the property surrounding the building to ensure that the business had adequate parking.
The Crosbys alleged that they reached a verbal agreement with Mr. Stinson whereby he would donate the property to them with the reservation of his own right of access.[1] The Crosbys had the property surveyed several times in furtherance of this alleged agreement. On February 24, 1998, the Crosbys bought the building at 1010 Contractors Circle.
On an uncertain date, perhaps in March 1998, Mr. Stinson signed a document styled "Donation Deed with Reservation of Servitude of Access." The document set out the terms of the donation; he was donating ownership of the property to the Crosbys, reserving only a servitude of passage. Mr. Stinson's signature on the document was not in authentic form. No other signatures appear on the document. The Crosbys allege that before they could get *617 to their attorney's office to sign the document, Mr. Stinson withdrew his consent to the deal. At his request, the document was later retrieved from the office of the Crosbys' lawyer.
On October 5, 1998, the Crosbys filed suit against Mr. Stinson, seeking specific performance of the verbal donation agreement, damages arising from the preparation of the donation documents and from the denial of the donation, and injunctive relief preventing Mr. Stinson from impeding the access of the Crosbys and their customers to the Crosbys' business. On that same date, the court granted the Crosbys a temporary restraining order (TRO) to protect their access to their business premises. On November 23, 1998, the Crosbys obtained a TRO preventing Mr. Stinson from impeding the Crosbys or their customers from parking at the business.
On December 1, 1998, Mr. Stinson filed an exception of no cause of action. He alleged that the donation of the property was not completed and that the Crosbys were not reasonable in relying to their detriment upon any verbal agreement to donate the property. On that same date, he filed a motion for summary judgment, asserting the same theories in opposition to the Crosbys' claims.
The trial court granted Mr. Stinson's exception of no cause of action, dissolved the TRO's and dismissed the Crosbys' action. The Crosbys initially sought supervisory review of that ruling, but this court remanded the matter to the trial court for perfection of an appeal from the judgment. The case is now before this court on appeal.

NO CAUSE OF ACTION
In City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, the supreme court explained the exception of no cause of action and the appellate review of the decision on such an exception:
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence.... The exception is triable on the face of the papers, and for the purpose of determining the issues raised by the exception, the court must presume that all well-pleaded facts in the petition are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff.... A court of appeal reviews de novo a lower court's ruling sustaining an exception of no cause of action because the exception raises a question of law and because the lower court's decision is generally based only on the sufficiency of the petition.... The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief.... [Citations omitted.]
La. C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
Although the trial court did not afford the Crosbys the opportunity to amend their petition to remove the grounds for Mr. Stinson's exception, such an opportunity would have served no purpose because no amendment could remove the grounds for the exception.
Ordinarily the exception of no cause of action is triable on the face of the petition and no evidence may be admitted. *618 La. C.C.P. art. 931. However, when the parties present evidence on an exception of no cause of action without objection, then both sides have consented to the consideration thereof and the pleadings are deemed expanded. Boykin v. Foster, 493 So.2d 731 (La.App. 2d Cir.1986); Borden v. West Carroll Parish Police Jury, 28,967 (La.App.2d Cir.12/11/96), 685 So.2d 454. The depositions of Mr. Stinson and Mr. Crosby were filed into evidence by counsel for Mr. Stinson in support of his motion for summary judgment and his exception of no cause of action. Counsel for the Crosbys not only failed to object before the trial court to consideration of the depositions in connection with the exception but, in brief to this court, expressly argues that they should be considered.

SPECIFIC PERFORMANCE
La. C.C. art.1986 provides:
Upon an obligor's failure to perform an obligation to deliver a thing, or not to do an act, or to execute an instrument, the court shall grant specific performance plus damages for delay if the obligee so demands. If specific performance is impracticable, the court may allow damages to the obligee.
Upon a failure to perform an obligation that has another object, such as an obligation to do, the granting of specific performance is at the discretion of the court. [Emphasis added.]
In Fredericks v. Fasnacht, 30 La. Ann. 117 (1878), the Court said:
It is elementary in our law, that where the negotiations contemplate and provide that there shall be a contract in writing, neither party is bound until the writing is perfected and signed. The distinction is manifest between those cases in which there is a complete verbal contract, which the law does not require to be reduced to writing, and a subsequent agreement that it shall be reduced to writing, and those in which, as in this case, it is a part of the bargain that the contract shall be reduced to writing. In the first class of cases the original verbal contract is in no manner impaired by the failure to carry out the subsequent agreement to put it in writing. In the second class of cases, the final consent is suspended; the contract is inchoate, incomplete, and it cannot be enforced until it is signed by all the parties.
The Crosbys do not argue that Mr. Stinson actually donated the property to them.[2] In his deposition, Mr. Crosby admitted that he knew that, in order for their verbal agreement to be effective and binding, the final written agreement had to be properly executed. However, the Crosbys contend that they and Mr. Stinson verbally agreed that he would complete the formalities required to donate the property to them. Such an agreement, they argue, is susceptible of the remedy of specific performance.
*619 Assuming arguendo that the parties did verbally agree that Stinson would complete the formal requirements for the donation, the question becomes whether such an agreement is civilly enforceable. More specifically, the question is whether the agreement to donate immovable property is one which the law requires to be reduced to writing.
A donation inter vivos is an act by which the donor divests himself, at present and irrevocably, of the thing given, in favor of the donee who accepts it. La. C.C. art. 1468. Donations of immovable property must be in authentic form. La. C.C. art. 1536 provides:
An act shall be passed before a notary public and two witnesses of every donation inter vivos of immovable property or incorporeal things, such as rents, credits, rights or actions, under the penalty of nullity.
We conclude that an agreement to donate immovable property, like the donation itself, must be reduced to writing in order to be civilly enforceable.
In the law of sales, the Civil Code clearly prescribes the formality requirements for a contract to sell immovable property. La. C.C. art. 2623 provides, in part:
A contract to sell must set forth the thing and the price, and meet the formal requirements of the sale it contemplates. [Emphasis added.]
La. C.C. art. 2440 provides:
A sale or promise of sale of an immovable must be made by authentic act or by act under private signature, except as provided in Article 1839.
La. C.C. art. 1839 provides, in part:
A transfer of immovable property must be made by authentic act or by act under private signature. Nevertheless, an oral transfer is valid between the parties when the property has been actually delivered and the transferor recognizes the transfer when interrogated on oath.
In Trident Oil & Gas Corporation v. John O. Clay Exploration, Inc., 622 So.2d 1191 (La.App. 2d Cir.1993), this court held that a contract to sell an immovable (in that case, mineral rights), cannot be the subject of a verbal agreement and that parol evidence was inadmissible to prove the contract.
We conclude that the same formal requirements must necessarily apply to a contract to donate immovable property. Enforcement of a verbal agreement to donate immovable property would negate the formal requirements of La. C.C. art. 1536. Giving effect to a purported verbal agreement to donate immovable property would also bypass the "cautionary function" of the formal requirement for donations. See Litvinoff, The Law of Obligations, § 12.12, West, 1992, for the purpose of the authentic act requirement. Enforcing a verbal agreement to donate could lead to a particularly egregious result because, unlike a contract to sell, the transferor/donor will receive no recompense for the divestiture of his property. Such an action would further lead to problems of proof of the obligation.
The plaintiffs contend that the proposed donationat least as set forth in the document signed by Mr. Stinsonwas onerous and escapes the formal requirements for donations inter vivos. La. C.C. art. 1523 provides:
There are three kinds of donations inter vivos:

The donation purely gratuitous, or that which is made without condition and merely from liberality;
The onerous donation, or that which is burdened with charges imposed on the donee;
The remunerative donation, or that the object of which is to recompense for services rendered.
La. C.C. art. 1524 provides:
The onerous donation is not a real donation, if the value of the object given does *620 not manifestly exceed that of the charges imposed on the donee.
La. C.C. art. 1526 provides:
In consequence, the rules peculiar to donations inter vivos do not apply to onerous and remunerative donations, except when the value of the object given exceeds by one-half that of the charges or of the services.
La. C.C. art.1910 provides:
A contract is gratuitous when one party obligates himself towards another for the benefit of the latter, without obtaining any advantage in return.
La. C.C. art.1909 provides:
A contract is onerous when each of the parties obtains an advantage in exchange for his obligation.
According to Black's Law Dictionary, 6th ed., 1990, in the civil law the term "onerous" means
based upon, supported by, or relating to a good and valuable consideration, i.e., one which imposes a burden or charge in return for the benefit conferred.
The proposed donation agreement specified that Mr. Stinson would retain the right of servitude of passage on the property and further provided that the donee would be liable for attorney fees and costs as well as damages caused by any interference with this servitude by employees or customers of the donee. At his deposition, Mr. Crosby stated that he had reviewed this agreement and communicated his satisfaction with it before Mr. Stinson signed it.
Despite the verbal agreement to the reservations, the reservations of rights are not advantages to the donorthe donor is merely retaining a part of his rights to the property while disposing himself of the remainder. Compare Cenac v. Hart, 98-1679 (La.App. 3d Cir.4/7/99), 741 So.2d 690, wherein an oral promise to transfer stock was found onerous because the promisee agreed to waive her community property rights in her impending marriage to the promisor.
Even if the reservations were advantages to the donor, which contention we reject, the reservations would not convert this transaction into an onerous donation. The plaintiffs offered no proof of the value of the reservations in the proposed agreement, so there is no evidence that the donation would escape the formal requirements for donations under the authority of La. C.C. art. 1526. Accordingly, the proposed donation was a real donation and the rules for donations inter vivos apply to this action.
In summation, we hold that the Crosbys have no cause of action to enforce a verbal contract to donate immovable property.

DETRIMENTAL RELIANCE
The Crosbys urge that Mr. Stinson is obligated to compensate them for needless expenses they incurred in reliance upon Mr. Stinson's alleged promise to donate the property. In this area, the law is well-settled. La. C.C. art.1967 provides, in part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous promise made without required formalities is not reasonable. [Emphasis added.]
Revision Comment (f) specifies, in part, that "reliance on a gratuitous donation not made in authentic form is not reasonable."
Because this was a gratuitous donation and because we hold that a verbal agreement to donate immovable property is not enforceable under the circumstances presented, we further hold that the Crosbys' reliance on any such verbal agreement in this case was not reasonable. See also Gray v. McCormick, 94-1282 (La.App. 3d Cir.10/18/95), 663 So.2d 480.

*621 PRELIMINARY INJUNCTIONS
Due to our decision that no enforceable agreement existed regarding the donation of the property from Mr. Stinson to the Crosbys, we hold that the trial court did not err in refusing injunctive relief. This assignment of error is without merit.

CONCLUSION
For the above assigned reasons, the judgment of the trial court granting William Stinson, Jr.'s exception of no cause of action is affirmed. Costs of this appeal are assessed to the appellants, Cary and Deborah Crosby.
AFFIRMED.
NOTES
[1] The parties had numerous discussions in which they attempted to resolve Mr. Stinson's many serious reservations about the proposed agreement. There was also controversy surrounding $2,900 in past maintenance performed on the property by Mr. Stinson while it was owned by the Crosbys' predecessor; although Mr. Crosby allegedly offered to reimburse Mr. Stinson for this amount, it was never paid.
[2] Mr. Stinson's signature on the donation agreement was not effective as an authentic act. La. C.C. art. 1833 provides, in part:

To be an authentic act, the writing need not be executed at one time or place, or before the same notary public or in the presence of the same witnesses, provided that each party who executes it does so before a notary public or other officer authorized to perform that function, and in the presence of two witnesses and each party, each witness, and each notary public signs it. [Emphasis added.]
This article is echoed in La. C.C. art. 1540, which provides:
A donation inter vivos shall be binding on the donor, and shall produce effect only from the day of its being accepted in precise terms.
The acceptance may be made during the lifetime of the donor by a posterior and authentic act, but in that case the donation shall have effect, with regard to the donor, only from the day of his being notified of the act establishing that acceptance. [Emphasis added.]
Mr. Stinson's unwitnessed, unnotarized signature is ineffective as an authentic act, and the Crosbys did not accept the donation in a posterior authentic act. In his deposition, Mr. Stinson denied that he agreed to donate the property and explained his signature on the agreement as an effort to see if the Crosbys agreed to its terms.