799 So.2d 841 (2001)
Travis L. ROGERS, Plaintiff-Appellant,
v.
ASH GROVE CEMENT COMPANY, et al., Defendants-Appellees.
No. 34,934-CA.
Court of Appeal of Louisiana, Second Circuit.
November 2, 2001.
*843 Paul A. Bonin, New Orleans, Kim Raines Chatelain, Baton Rouge, Cornelia S. Ullmann, New Orleans, Counsel for Appellant.
Cook, Yancey, King & Galloway, by Herschel E. Richard, Jr., F. Drake Lee, Jr., John T. Kalmbach, Shreveport, Counsel for Appellees.
Before BROWN, STEWART and GASKINS, JJ.
GASKINS, J.
The plaintiff, Travis L. Rogers, filed a defamation and malicious prosecution suit against three creditors and their attorneys who had unsuccessfully sued him for fraud and racketeering under federal law arising out of a bankruptcy proceeding. The trial court dismissed the plaintiffs petition on an exception of no cause of action, concluding that the plaintiff could not amend his petition to state a cause of action for defamation or malicious prosecution, or both. The plaintiff filed a devolutive appeal. The defendants have answered the appeal requesting that their motion to dismiss be sustained, that their motion to strike be granted, and that they be awarded attorney fees. We affirm.

FACTS AND PROCEDURAL HISTORY
Ash Grove Cement Company ("Ash Grove"), Zurich Insurance Company ("Zurich"), and American Guaranty & Liability Insurance ("American") were creditors in a bankruptcy proceeding filed by Dewey Williams, a friend and associate of the plaintiff. During the proceedings, the three creditors filed a separate action against several parties associated with Williamsincluding Rogersarising out of alleged schemes to defraud the creditors.[1] The three creditors were represented by Joseph R. Naus ("Naus"), an attorney with the firm of Wiener, Weiss, Madison & Howell, A Professional Law Corporation ("WWMH"). The suit alleged that Rogers and others committed acts constituting wire fraud, mail fraud, money laundering, racketeering, and conspiracy under 18 U.S.C.A. § 1962(c) and (d), the Racketeer Influenced and Corrupt Organizations statute ("RICO"). The allegations against Rogers arose from him "buying" two concrete plants from Williams. Although Rogers admitted he signed documents purporting to be the sale of the properties, he testified in Williams' bankruptcy case that he never thought he owned the properties. Rogers also identified his signature on documents which indicated that he bought the properties for $100,000 .00, then "sold" them for the same amount. Rogers testified, however, that he never gave or received any money. At Williams' direction, Rogers "sold" one of the plants to Williams' sister. Roger denies that he knew of or authorized a cashier's check drawn on Farmers' Bank & Trust showing him as the remitter in connection with the transaction. After a jury trial, Rogers was found not liable on *844 all the RICO allegations, but was found liable for fraud or conspiracy to commit fraud under state law. Judgment was rendered against him for $18,208.
During the suit, Rogers maintained that he never received anything of value for his actions, and he was simply a victim of his friendship with Williams. Through his attorney, he wrote letters to the creditors' attorneys demanding that the creditors drop the allegations of criminal conduct, or, after a favorable verdict was rendered, he would file a suit for defamation and malicious prosecution.
Rogers commenced the instant suit against Ash Grove, Zurich, American, Naus, and WWMH. In the petition, he alleges that the complaint and other pleadings filed by the defendants in the creditor's action falsely accused him of participating in a scheme to defraud creditors by committing federal crimes in violation of RICO.
The defendants unsuccessfully attempted to remove the case to federal court on the basis of diversity of citizenship. Subsequently, in state court, they filed an exception of no cause of action and a special motion to strike the petition and stay all proceedings, including discovery, until the court ruled on the exception and motion. In their exception, the defendants pled the qualified privilege extended to litigants in a judicial proceeding. The court dismissed the plaintiff's petition with prejudice for failure to state a cause of action, concluding that the petition did not allege facts showing malice or intent to harm the plaintiff. Further, the court concluded that Rogers could not amend his petition to allege facts showing malice. This appeal followed.

DISCUSSION
In City of New Orleans v. Board of Directors of Louisiana State Museum, 98-1170 (La.3/2/99), 739 So.2d 748, the Louisiana Supreme Court explained the exception of no cause of action and the appellate review of the decision on such an exception:
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The burden of showing that the plaintiff has stated no cause of action is upon the exceptor. The public policy behind the burden is to afford the party his day in court to present his evidence.... The exception is triable on the face of the papers, and for the purpose of determining the issues raised by the exception, the court must presume that all wellpleaded facts in the petition are true. All reasonable inferences are made in favor of the nonmoving party in determining whether the law affords any remedy to the plaintiff.... A court of appeal reviews de novo a lower court's ruling sustaining an exception of no cause of action because the exception raises a question of law and because the lower court's decision is generally based only on the sufficiency of the petition.... The question is whether, in the light most favorable to the plaintiff, the petition states any valid cause of action for relief.... [Citations omitted.]
La. C.C.P. art. 934 provides:
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection cannot be so removed, or if plaintiff fails to comply with the order to amend, the action shall be dismissed.
An exception of no cause of action is likely to be granted only in the *845 unusual case in which the plaintiff includes allegations that show on the face of the petition that there is some insurmountable bar to relief. Thus, dismissal is justified only when the allegations of the petition itself clearly show that the plaintiff does not have a cause of action, or when its allegations show the existence of an affirmative defense that appears clearly on the face of the pleadings. City of New Orleans v. Board of Com'rs of Orleans Levee Dist., 93-0690 (La.7/5/94), 640 So.2d 237; Blackett v. City of Monroe, 33,339 (La.App.2d Cir.9/7/00), 766 So.2d 768. A court appropriately sustains the peremptory exception of no cause of action only when, conceding the correctness of the well-pleaded facts, the plaintiff has not stated a claim for which he can receive legal remedy under the applicable substantive law. City of New Orleans v. Board of Directors of Louisiana State Museum, supra; Blackett v. City of Monroe, supra.
A successful claimant in a defamation action must establish five elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) injury. Ordinarily, where the defamatory words complained of are statements that the injured party engaged in criminal conduct and publication is established, the elements of falsity, malice, and injury are presumed although they may be rebutted. Arledge v. Hendricks, 30,588 (La.App.2d Cir.6/26/98), 715 So.2d 135, writ denied, 98-2015 (La.11/20/98), 728 So.2d 1287.
The elements required to succeed in a malicious prosecution action are as follows: (1) the commencement or continuance of an original criminal or civil judicial proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. Jones v. Soileau, 448 So.2d 1268, 1271 (La.1984); Wattigny v. Lambert, 490 So.2d 1115 (La.App. 3d Cir. 1986), writ denied, 493 So.2d 1221 (La. 1986).
Both the plaintiff and the defendants have presented documents supporting the petition and the exception. Ordinarily the exception of no cause of action is triable on the face of the petition and no evidence may be admitted. La. C.C.P. art. 931. However, when the parties present evidence on an exception of no cause of action without objection, then both sides have consented to the consideration thereof and the pleadings are deemed expanded. Crosby v. Stinson, 33,628 (La.App.2d Cir.8/23/00), 766 So.2d 615; Borden v. West Carroll Parish Police Jury, 28,967 (La.App.2d Cir. 12/11/96), 685 So.2d 454; Boykin v. Foster, 493 So.2d 731 (La.App. 2d Cir.1986).
The plaintiff's petition alleges that the defamatory remarks were made in the course of the prior judicial proceedings. Statements made in the course of a judicial proceeding are subject to a qualified privilege if the statements are material to the proceeding, and are made with probable cause and without malice. Freeman v. Cooper, 414 So.2d 355 (La.1982). Additionally, there is a heightened pleading requirement when suing an attorney (and/or clients) for defamation in the context of a judicial proceeding. This heightened standard requires the plaintiff to allege facts in his petition that show malice or an intent to cause direct harm to the plaintiff. Montalvo v. Sondes, 93-2813 (La.5/23/94), 637 So.2d 127.
Qualified privilege is an affirmative defense to defamation. La. C.C.P. art. 1005; Douglas v. Thomas, 31,470 (La. App.2d Cir.2/24/99), 728 So.2d 560, writ *846 denied, 99-0835 (La.5/14/99), 741 So.2d 661. The existence of this affirmative defense is apparent on the face of the allegations in the petition, supporting documents (i.e., the allegations that the defamatory statements were made in the course of the creditors' action), and the exception pleadings. The court may consider the additional documents filed with the pleadings for purposes of the exception of no cause of action. Crosby v. Stinson, supra.
Rogers contests the argument that there exists a qualified privilege for defamatory words spoken in a judicial proceeding and a heightened pleading standard requiring specific factual allegations of actual malice. In support of this argument he cites Wattigny v. Lambert, 408 So.2d 1126 (La.App. 3d Cir.1981), writ denied, 410 So.2d 760 (La.1981), cert. denied, 457 U.S. 1132, 102 S.Ct. 2957, 73 L.Ed.2d 1349 (1982). In particular, he argues that the defendants' allegations of RICO violations were "unnecessary," presumably meaning that they were immaterial to their claim and were made simply for the purpose of obtaining treble damages.
We conclude that Arledge v. Hendricks, supra, is controlling in this circuit. In that case, a five-judge panel of this court reversed the trial court's dismissal of Arledge's petition for libel against his former wife's attorney. Arledge's petition was dismissed on an exception of no cause of action on grounds that he did not allege facts showing an intent to harm, where the defamatory words consisted of allegations that he committed incest with his daughter. The court reasoned that the allegation in the petition that the attorney knew the charges of incest were untrue fulfilled the requirement of allegations of intent to harm or malice sufficient to defeat the exception.
In the instant case, there are no allegations in the plaintiffs petition that the defendants knew their RICO allegations were false. His petition alleges that the litigants and their attorneys defamed and maliciously prosecuted him when they alleged that he committed various acts of fraud and money laundering and that these acts constituted a pattern of racketeering under RICO. The plaintiff alleges that the sole purpose of the allegations was an attempt to obtain the treble damages afforded by the RICO statute. There are no allegations of fact that the creditors or their attorneys intended to harm the plaintiff or that they knew the allegations were not true.
The plaintiff's petition alludes to two letters (filed with the petition as Exhibits "A" and "B") he sent to James R. Madison and R. Joseph Naus of the WWMH law firm. These attorneys represented the defendants Ash Grove, Zurich and American. Among other things, the letters expressly stated that the creditors knew that Rogers never received anything of value for his role in the alleged fraud, and although it was a major component to the RICO suit, that it had long been established that he did not know about or authorize the cashier's check. We do not find that, when fairly construed and considered to be part of the pleadings, the comments in the letters referred to by the plaintiff constitute evidence of malice or an intent to harm the plaintiff, or that the creditors knew the allegations were untrue as in Arledge.
Based upon our review of the letters and other documents in the record of the prior proceedings upon which this suit is based, we conclude that, although the federal jury found that the plaintiff was not liable under RICO, the allegations of bankruptcy crimes in the creditors' complaint and other pleadings were made with probable cause and were material to the proceedings. This view of the documents of record and testimony is bolstered by the federal *847 jury's finding that the plaintiff was liable for fraud under state law. Additionally, the fact that the court denied Rogers' motions for a judgment as a matter of law on the RICO claims at the close of his case and at the conclusion of trial indicates that the federal trial court believed there was enough evidence to submit the matter to a jury. Since neither the petition nor its exhibits allege facts that show malice on the part of the defendants, the plaintiff has failed to state a cause of action for defamation or malicious prosecution.
For these same reasons, we conclude that the trial court properly laid this matter to rest by not allowing Rogers to attempt to amend his petition. Based upon a review of the record, we agree with the trial court's conclusion that the plaintiff could not amend the petition to state a cause of action. Specifically, we surmise from the transcript of the hearing and from the written ruling that the court believed that plaintiff could not show that the charges of criminal conduct were made without probable cause, and, as stated by the court, based upon its review of the already extensive record, it would rule favorably on a summary judgment motion by the defendants. As we stated in Boykin, supra, "We see no useful purpose in a trial court reversal in circumstances such as presented here. A remand would only amount to a reconsideration of the same evidence under the guise of a different label."

CONCLUSION
The judgment of the trial court is therefore affirmed. Inasmuch as we affirm the dismissal of the suit, the issues raised in the defendants' answer to the appeal are deemed moot. Each party shall bear its own costs.
AFFIRMED.
BROWN, J., dissents with reasons.
BROWN, J., dissenting,
The purpose of the peremptory exception of no cause of action is to determine the sufficiency in law of the petition. The issue at the trial of the exception is whether, on the face of the petition, the plaintiff is legally entitled to the relief sought. The purpose of the exception of no cause of action is not to determine if plaintiff will ultimately prevail at trial. There is a strong public policy in favor of affording a litigant an opportunity to present his evidence. Arledge v. Hendricks, 30,588 (La. App.2d Cir.06/26/98), 715 So.2d 135, writ denied, 98-2015 (La.11/20/98), 728 So.2d 1287.
Plaintiff has attached exhibits to his petition and defendants have presented extensive documents in support of their motion to strike. The exception of no cause of action should not be confused with a summary judgment motion. What defendants have presented in support of their motion to strike is irrelevant to whether plaintiff's petition, as expanded by the exhibits, states a cause of action.
When the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. La.C.C.P. art. 934.
Arledge, supra, involved a defamation action against an attorney for pleadings filed in a custody proceeding. The defamatory words consisted of allegations that Arledge committed incest with his daughter. The court in Arledge specifically found:
... the jurisprudence has set out special requirements for defamation actions based upon pleadings filed by the attorney *848 of one's opponent in litigation.... The policy behind this rule is not to reduce a lawyer's responsibility for his actions, but is to prevent a chilling effect on the adversarial process of representing one's client and to prevent a division of the loyalty an attorney owes the client. Montalvo, supra.

The above-stated rule, however, does not prevent an attorney from being sued by his client's opponent. Quoting Penalber v. Blount, 550 So.2d 577 (La.1989), the Montalvo court stated:
Intentionally tortious actions, ostensibly performed for a client's benefit, will not shroud an attorney with immunity. Consequently, even though an attorney does not generally owe a duty to his client's adversary, under the broad ambit of LSA C.C. art. 2315, an attorney may be held personally accountable for his intentional tortious conduct ....(citation omitted.)
The Montalvo court noted that identifying an intentional tort in the context of an attorney's actions may be more difficult than identifying a traditional intentional tort. The mere filing of a lawsuit, even if the suit appears meritless on its face, is not enough, since the attorney may be simply the instrument through which the client invokes judicial determination. Montalvo, supra. For a petition to state a cause of action against an opponent's attorney, the petition must allege facts showing, on the part of the attorney, specific malice or an intent to "cause direct harm" in persuading his client to initiate and continue the suit. Montalvo, supra.

Arledge, 715 So.2d at 139.
Rogers' petition alleges that the litigants and their attorneys defamed and maliciously prosecuted him when they alleged that he committed various criminal acts of fraud and money laundering and that these acts constituted a pattern of racketeering under RICO. Rogers asserts in the letters referenced and attached with the petition that the sole purpose of the allegations was an attempt to obtain treble damages afforded by the RICO statute.
In Arledge, supra, we stated:
Words which expressly or implicitly accuse another of criminal conduct or which, by their nature, tend to injure one's personal or professional reputation are considered defamatory per se. If the plaintiff proves publication of defamatory per se words, the elements of falsity and malice are presumed although they may be rebutted by the defendant. Injury is also presumed. (Emphasis added.)
Id. at 138.
As in Arledge, allegations in this case of criminal conduct with the sole intent of obtaining treble damages suffices to satisfy the "malice" or "intent to harm" pleading requirement for an action against an attorney, as well as for an action against the attorney's client.
Although Rogers' petition states that the allegations of criminal conduct were made in a judicial proceeding, it remains a factual issue as to whether such allegations were material to that proceeding and whether probable cause existed for their assertion. In the context of falsely accusing Rogers of criminal conduct, the words are implicitly immaterial and without probable cause. Arledge, supra.
As we stated in Arledge, supra, when reasonably possible, the court should maintain a petition against the peremptory exception of no cause of action so that the litigant is afforded an opportunity to have his day in court. Keeping in mind that accusations of criminal conduct are per se defamatory and accepting as true the allegations that defendants asserted *849 RICO violations for the sole purpose of intimidating plaintiff with the threat of treble damages, Rogers' petition sufficiently alleges an intent to harm Rogers. The petition therefore alleges a cause of action in defamation or malicious prosecution against both the litigant group and the attorney group under the rule pronounced in Montalvo and Arledge. In addition, the majority opinion sets forth no convincing reasons why plaintiff could not amend his petition to state a cause of action.
Defendants also filed a special motion to strike plaintiff's petition pursuant to La. C.C.P. art. 971, which the trial court denied without discussion. Defendants answered the appeal arguing that the motion to strike should have been granted. Article 971 provides that a cause of action against a person for that person's exercise of his right of free speech in connection with a public issue shall be subject to a special motion to strike unless the plaintiff has established a probability of success on the claim. According to the statute's definition, written or oral statements made in a judicial proceeding are included within the reach of the statute.
The editor's note to Article 971 states that the article appears to establish a specialized defense motion akin to a motion for summary judgment but limited to defamation actions. As in a motion for summary judgment, the motion to strike is submitted upon the pleadings and supporting and opposing affidavits. Although labeled a motion to strike, Article 971's intent and purpose is the same as a summary judgement motion.
The majority opinion would not be as strained if it had denied the exception of no cause of action and addressed the Article 971 motion to strike. I note that the trial court denied the motion to strike. Thus, the trial court obviously believed that there were material issues of fact.
NOTES
[1] The suit, entitled Ash Grove Cement Co. v. Bruce D. Maloch, et al., No. 94-1340, was filed in the United States District Court for the Western District of Louisiana.