STEPHENS, J.
Dr. Michael Thomas Acurio appeals a judgment by the Twenty-Sixth Judicial District Court, Parish of Bossier, State of Louisiana, granting a judgment which sustained the peremptory exception of no cause of action in favor of his previous spouse, Danielle Dickerson Acurio Cage.
*828 For the following reasons, we affirm the trial court's judgment.
FACTS
Michael and Danielle were married for the first time in June 1998. That marriage ended in divorce in February 2000. Their initial marriage was under the terms of a matrimonial agreement and established a separate property regime. In early 2002 the couple remarried; the parties purportedly entered into a prenuptial matrimonial agreement dated January 25, 2002, with the purpose of establishing a separate property regime between them (the "agreement"). It was signed in the presence of a notary and one witness. Their second marriage began four days after signing the agreement.[1]
In June 2009, Danielle filed a petition for divorce. A judgment was rendered on October 6, 2010, in which it was stated a community of acquets and gains existed between the parties, terminating it retroactively to June 2, 2009. That judgment also reserved to the parties any rights they may have had involving the agreement. Subsequently, Danielle filed a motion seeking a declaration that the agreement was invalid, as it did not meet the form requirements under the Louisiana Civil Code. The trial court agreed that the agreement failed for failure to adhere to form requirements, and Michael appealed that judgment to this court. This court reversed the trial court and upheld the validity of the agreement.[2] However, that opinion was reversed in Acurio v. Acurio , 2016-1395 (La. 5/3/2017), 224 So.3d 935 (" Acurio I "), where the Supreme Court of Louisiana found that the failure to meet all form requirements prior to the marriage rendered the agreement invalid. Specifically, the Acurio I court recognized that, "it is clear the legislature intended to make it onerous to waive one's community property rights, at least to the extent that certain procedural hurdles were put in place to ensure the parties consider the consequences of entering into a matrimonial agreement that is not favored by public policy." Id. at 938. Further, the Acurio I court stated, "we find the very fact that 'an act under private signature duly acknowledged' is presented as the sole alternative to an 'authentic act' is a telling recognition that both methods of execution are meant to be sufficiently arduous so as to provoke thought and consideration before entering into the agreement." Id. at 939-40. In invalidating the agreement, the supreme court concluded, "we find in order to have legal validity, a matrimonial agreement executed prior to marriage must be made by authentic act or signed and duly acknowledged prior to marriage." Id. at 940.
After the supreme court's invalidation of the agreement, Michael filed a petition for damages against Danielle in the trial court, alleging breach of contract, detrimental reliance, natural obligations, the clean hands doctrine, and equitable estoppel. He claimed that several days before their second marriage, the couple entered into an oral contract where Danielle agreed she would prepare and present a prenuptial matrimonial agreement reflecting the parties' intent to provide for a separate property regime governing all the rights between them during their marriage. According to Michael, Danielle knew he would not have married her again without the benefit of a matrimonial agreement separating their property. He asserted in his petition that this was a valid oral contract *829 to make a subsequent valid prenuptial matrimonial agreement. He claimed she purported to do so and partially fulfilled her obligations, but ultimately breached their oral contract in two ways: (1) she failed to provide a notarial act, and/or (2) she failed to have the signatures of the parties to the agreement acknowledged prior to their marriage. Michael further asserted that Danielle represented to him that the agreement was valid, and he relied upon her representation to his detriment. Michael sought a trial by jury for his lawsuit.
Danielle responded with a peremptory exception of no cause of action and a motion for fees and costs.[3] She argued that not only did Michael not state a cause of action in his petition, but the petition is frivolous, entitling her to costs and fees against him.[4] A hearing on the exception was conducted. After argument by counsel, the trial court ruled and granted the exception of no cause of action on all theories of law; however, the trial court denied the request for sanctions. This appeal by Michael ensued.[5]
DISCUSSION
Peremptory Exception of No Cause of Action
Provided by La. C.C.P. art. 927(A)(5), the peremptory exception of no cause of action tests the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged in the petition. Scheffler v. Adams and Reese, LLP , 2006-1774 (La. 2/22/07), 950 So.2d 641 ; Gipson v. Fortune , 45,021 (La. App. 2d Cir. 1/27/10), 30 So.3d 1076, writ denied , 2010-0432 (La. 4/30/10), 34 So.3d 298. A "cause of action," when used in the context of the peremptory exception of no cause of action, refers to the operative facts that give rise to the plaintiff's right to judicially assert the action against the defendant. White v. St. Elizabeth B.C. Bd. of Directors , 45,213 (La. App. 2d Cir. 6/2/10), 37 So.3d 1139. The purpose of the exception of no cause of action is not to determine whether the plaintiff will prevail at trial, but is to ascertain if a cause of action exists. Bogues v. Louisiana Energy Consultants, Inc. , 46,434 (La. App. 2 Cir. 8/10/11), 71 So.3d 1128. The exception is triable on the face of the petition, and for the purpose of determining the issues raised by the exception, the well-pleaded facts in the petition must be accepted as true. Fink v. Bryant , 2001-0987 (La. 11/28/01), 801 So.2d 346.
The burden of demonstrating that the petition states no cause of action is upon the mover. Wright v. Louisiana Power & Light , 2006-1181 (La. 3/9/07), 951 So.2d 1058 ; Scheffler, supra.
An appellate court's review of a trial court's ruling sustaining an exception of no cause of action is de novo because the exception raises a question of law, and *830 the trial court's decision is based only on the sufficiency of the petition. Fink, supra. The essential question is whether, in the light most favorable to plaintiff and with every doubt resolved in plaintiff's favor, the petition states any valid cause of action for relief. Wright, supra.
On appeal, Michael raises five assignments of error, three of which are based on what he states are the "well pled factual allegations" of his petition. The petition sets forth the following claims, which, in his appeal brief, Michael argues the trial court should have accepted as true. A summary of the pertinent allegations are:
• Several days before the couple's January 29, 2002, marriage, Michael and Danielle entered into an "oral contract" where Danielle agreed to provide a valid prenuptial matrimonial agreement so that the parties' marriage would be subject to a separate property regime;
• Danielle, who had been married to Michael before in a marriage subject to a valid prenuptial matrimonial agreement, understood the importance of such an agreement to Michael. He claims she knew he would not remarry her without such an agreement;
• The couple's oral contract charged Danielle with responsibility of presenting a valid and enforceable matrimonial agreement;
• Pursuant to the oral contract, Danielle assumed the responsibility of creating the agreement, which may have included provisions benefiting her, as long as they pertained to Michael's "fundamental goal" to establish a separate property regime;
• Danielle prepared the agreement subject to the oral contract, which notably included a provision that the couple specifically would maintain separate checking, savings, and retirement accounts, not subject to the community property regime;
• Danielle partially fulfilled her obligation under the oral contract in that she drafted the agreement and provided a notary public for the execution of the agreement, but she failed to provide a valid and enforceable matrimonial agreement since "she (1) failed to provide a notarial act, and (2) failed to have the signatures of the parties to the prenuptial agreement acknowledged prior to the marriage";
• Danielle represented to Michael that the agreement was valid, but she misrepresented the truth. As a result, Michael married Danielle without a valid agreement;
• Because Danielle failed to present a valid agreement, she breached the oral contract entered into by her and Michael, subjecting him to significant monetary losses;
• Danielle knew Michael would go forward with the marriage if she represented to him that the agreement was valid, but that he would not marry her without a valid agreement;
• Danielle represented that the agreement was valid, and the couple lived in accordance with the agreement during their marriage-they had separate bank and retirement accounts, separate income streams, and separate credit cards. Their matrimonial domicile was purchased by Michael with "separate" funds and in his name only;
• Michael trusted Danielle's representations that the agreement was valid, which trust was reasonable because he loved Danielle;
• Michael relied to his detriment on Danielle's representations that the agreement was valid and enforceable;
• His reliance on Danielle's representations was justified as evidenced by *831 the fact that the couple lived by the terms of the agreement; and,
• Danielle acted as if the couple's marriage was under the separate property regime, which lulled Michael into a false sense of security regarding his matrimonial property rights. Had he known the agreement was invalid, he would have taken legal steps to protect his property; thus, Danielle is estopped from denying the validity and enforceability of the agreement since her conduct prevented him from effectively protecting his rights.
Initially, we note the assignment of error by Michael that applies to the trial court's judgment in general, which is not separately articulated in brief but generally argued. Michael maintains the trial court used the inappropriate legal standard in examining the sufficiency of his petition, as it should have simply accepted his alleged facts as true and not considered any principles of law regarding matrimonial agreements. We observe the purpose of the exception of no cause of action: it is a procedural device which "test[s] the legal sufficiency of the plaintiff's petition by determining whether the law affords a remedy on the facts alleged." Scheffler, supra at 646 (emphasis added). Thus, the alleged facts are not examined for their truthfulness in a vacuum, but must be examined in the context of the applicable legal theory of the case.
Here, an analysis of Michael's petition and its alleged facts hinges on whether the antecedent oral contract is valid and/or whether Michael suffered detrimental reliance. Such a determination inherently requires analysis of the validity of the subsequent contract-the agreement between him and Danielle. It is implicit in the examination of whether a cause of action exists that the legal principles applicable to the agreement, i.e. , a prenuptial matrimonial agreement, must be considered. The courts of this state require only that a pleading set forth the facts upon which relief may be granted. See La. C.C.P. art. 891 ; First S. Prod. Credit Ass'n v. Georgia-Pac. , 585 So.2d 545, 548 (La. 1991). Recovery may be granted to a party under any legal theory justified by the facts pled. See La. C.C.P. art. 862. Therefore, in order to reach a conclusion, the trial court was tasked with examining not only the allegations contained in the petition. Also, in order to determine whether those facts alleged in the petition support a cause of action, the trial court additionally and properly considered the legal principles regarding the issues at hand: in general and specifically, the legality of the ultimate agreement and its connection to oral contracts and detrimental reliance. Michael's assignment of error on this issue is without merit.
Validity of Oral Contract
In his first assignment of error, Michael argues that the trial court erred by not accepting as true the "well pled factual allegations" in his petition which set forth a claim for breach of an oral contract. Related to that is an additional assignment of error where he argues the trial court erred by applying the legal principles for prenuptial matrimonial agreements to his claim of a breach of an oral argument. Michael contends that Danielle made an oral promise to him to prepare and provide a valid and enforceable prenuptial matrimonial agreement, which, by virtue of the ultimate opinion in Acurio I , she failed to do. Thus, he maintains, she breached an oral agreement to present a valid and enforceable agreement, and he asserted a legal cause of action in that vein. We disagree.
The ultimate issue on appeal is whether such an oral agreement is enforceable and *832 whether Michael asserted facts to support that claim. This raises the question: may someone be bound by an oral agreement to prepare and present a valid prenuptial matrimonial agreement, which is a contract with strict form requirements? Consideration of the legal principles regarding matrimonial agreements is integral to an analysis of the question at hand. Without such consideration, one Michael contends was in error, the pertinent question of whether a cause of action has been asserted cannot be answered. Thus, it is incumbent to consider the form requirements of matrimonial agreements.
Louisiana C.C. art. 2331 provides:
A matrimonial agreement may be executed by the spouses before or during marriage. It shall be made by authentic act or by an act under private signature duly acknowledged by the spouses.
Clearly, in order for a matrimonial agreement to be valid, the prescribed form must be adhered to, and failure to do so results in an invalid contract. As already stated, this particular agreement was examined in Acurio I and determined to be invalid for failure to adhere to the form requirement of the Louisiana Civil Code. Acurio I , at 940.
Likewise, a contract seeking to bind someone to enter into a prenuptial matrimonial agreement must be in the precise form as that subsequent agreement. In fact, as stated by Professor Ronald J. Scalise Jr.[6] :
The Louisiana Civil Code provides that when the law requires a contract to be in written form, the contract may not be proved by testimony or by presumption, unless the written instrument has been destroyed, lost, or stolen.
....
When a writing is required for the validity of a contract, other acts related to that validity also require a writing. Thus, a mandate to buy or to sell immovable property must be in writing because the sale of immovable property requires a writing. Even a contract made in preparation of, or looking forward to, another contract that requires a writing must be made in writing also. Thus, a promise to sell, or an option to buy, immovable property must be made or granted in writing since the final sale of immovable property requires a writing.
§ 12.12. Written form required by law, 5 La. Civ. L. Treatise, Law of Obligations § 12.12 (2d ed.) (emphasis added). Here, the oral agreement, as specifically alleged by Michael, was a contract looking forward to another contract, a prenuptial matrimonial agreement. That subsequent contract, the agreement between Michael and Danielle, was subject to strict form requirements-form requirements which the oral promise came nowhere near adhering to. Such an antecedent oral contract purporting to bind the parties to a subsequent matrimonial agreement is unenforceable.
Consider Crosby v. Stinson , 33,628 (La. App. 2 Cir. 8/23/00), 766 So.2d 615 ; although a matrimonial agreement was not at issue, the facts in Crosby are directly analogous to those at hand. There, the Crosbys alleged having had a verbal agreement with Stinson that he would donate certain property to them reserving a right of access to Stinson. The donation was executed by the parties; however, it was not in authentic form-the requisite form for donations of immovable property pursuant to La. C.C. art. 1536. Later, Stinson withdrew his consent to the donation, and the Crosbys filed suit against Stinson seeking specific performance of the verbal *833 agreement and damages arising from the preparation of the donation documents, among other relief. Stinson filed an exception of no cause of action, which was granted by the trial court. In affirming the trial court, this court explained:
We conclude that the same formal requirements must necessarily apply to a contract to donate immovable property. Enforcement of a verbal agreement to donate immovable property would negate the formal requirements of La. C.C. art. 1536. Giving effect to a purported verbal agreement to donate immovable property would also bypass the "cautionary function" of the formal requirement for donations. Enforcing a verbal agreement to donate could lead to a particularly egregious result because, unlike a contract to sell, the transferor/donor will receive no recompense for the divestiture of his property. Such an action would further lead to problems of proof of the obligation.
Id. at 619 (citation omitted).
To enforce an oral contract to enter into a prenuptial matrimonial agreement that is otherwise invalid due to failure of form would lead to an egregious result. The legal regime is the default regime and is favored by the legislature. In re Succession of Faget , 2010-0188 (La. 11/30/10), 53 So.3d 414, 421. Accordingly, such agreements to alter the legal regime are subject to strict form requirements articulated in La. C.C. art. 2331. To allow "backdoor" enforcement of an otherwise invalid and illegal matrimonial agreement by recognizing the breach of an oral agreement would circumvent the strict legal requirements of form for matrimonial agreements and the favor of the legal regime. Therefore, we hold that the trial court's judgment on this issue was not in error. Michael has no cause of action to enforce an oral contract to enter into a prenuptial matrimonial agreement, which agreement has been specifically deemed invalid, notably for failure of form, by the Louisiana Supreme Court in Acurio I . This assignment of error has no merit.
Detrimental Reliance
In Michael's second assignment of error, he argues the trial court erred in failing to accept as true his claim regarding detrimental reliance. It is his position that the trial court erroneously considered his subjective reasonableness in relying on a contract that was later determined to be invalid.
We recognize Michael's assignment of error that the trial court erred in applying principles applicable to matrimonial agreements when considering the issue of detrimental reliance. For the reasons articulated above regarding the oral contract, it is also necessary to consider the principles applicable to matrimonial agreements in order to fully consider whether there was detrimental reliance by Michael. Thus, even though Michael specifically pleads detrimental reliance as his theory of recovery, the trial court was not in error in analyzing the facts pled under other legal theories, i.e. , matrimonial agreements, to determine if he is entitled to recovery.
The theory of detrimental reliance, also referred to in the jurisprudence as promissory or equitable estoppel, is contained in La. C.C. art. 1967, which provides in pertinent part:
A party may be obligated by a promise when he knew or should have known that the promise would induce the other party to rely on it to his detriment and the other party was reasonable in so relying. Recovery may be limited to the expenses incurred or the damages suffered as a result of the promisee's reliance on the promise. Reliance on a gratuitous *834 promise made without required formalities is not reasonable.
The doctrine of detrimental reliance is designed to prevent injustice by barring a party from taking a position contrary to his prior acts, admissions, representations, or silence. Luther v. IOM Co. LLC , 2013-0353 (La. 10/15/13), 130 So.3d 817 ; Hansen v. River Cities Disposal Co., Inc. , 51,700 (La. App. 2 Cir. 11/15/17), 245 So.3d 213. To establish detrimental reliance, a party must prove three elements by a preponderance of the evidence: (1) a representation by conduct or word; (2) justifiable reliance; and (3) a change in position to one's detriment because of the reliance. Luther, supra ; Suire v. Lafayette City-Parish Consol. Government , 2004-1459 (La. 4/12/05), 907 So.2d 37, 59. However, it is difficult to recover under the theory of detrimental reliance, because estoppel is not favored in Louisiana law. Louisiana Office of Risk Mgmt. v. Richard , 2013-0890 (La. 10/15/13), 125 So.3d 398, 402.
Michael alleged that Danielle orally promised to provide a valid and enforceable matrimonial agreement with the goal of inducing him to marry her, and he claimed that her oral promise to produce a valid agreement induced him to marry her, to his detriment. The trial court considered Michael's allegations and concluded that his reliance on Danielle's promise was unreasonable, which Michael claims was in error and should not have been considered in an exception of no cause of action. However, we conclude Michael's petition does not assert facts sufficient to support a cause of action for detrimental reliance, which is readily observed by those allegations contained therein.
First, equitable considerations and detrimental reliance cannot be permitted to prevail when in conflict with the positive written law. Luther, supra at 826 ; Morris v. Friedman , 1994-2808 (La. 11/27/95), 663 So.2d 19, 25. Michael cannot prevail on his claim of detrimental reliance, when that reliance was on an unenforceable oral contract pertaining to a subsequent contract which was invalid. Consider John W. Stone Oil Distrib., L.L.C. v. River Oaks Contractors & Developers, Inc., 07-1001 (La. App. 5 Cir. 5/27/08), 986 So.2d 103, 105, writ denied , 2008-1397 (La. 9/26/08), 992 So.2d 992. There, the plaintiff ("Stone") sued defendants ("River Oaks") to enforce an oral agreement. Stone argued in that oral agreement River Oaks agreed it would sell immovable property to Stone. When River Oaks ultimately refused to sell the property to Stone, he sued, alleging detrimental reliance on River Oaks' oral agreement to sell. The court recognized that at issue was an "alleged promise ... to sell immovable property." Id. at 108. Quoting Morris, supra , the court observed: "Equity will not lie where a positive legal requirement, not adhered to, exists." John W. Stone Oil Distrib., L.L.C. , supra at 108. Stone's claim was dismissed. Likewise, Michael cannot rely to his detriment on an illegal promise between the parties. As discussed herein, an oral promise to enter into a prenuptial matrimonial agreement, which is required to be in writing, is itself invalid. For this reason, on the face of his petition, he fails to allege sufficient facts to prove his claim of detrimental reliance.
Second, a party having the means readily and conveniently available to determine the true facts, but who fails to do so, cannot claim detrimental reliance. Luther, supra at 826. The facts alleged do not indicate that Michael could not avail himself of the truth as to the validity of the agreement, notwithstanding his "love" for Danielle. Surely, considering the couple's history, Michael, obviously a highly *835 educated and sophisticated individual, understood the need and advisability of having an attorney prepare a legal document he himself deemed of utmost importance and obviously to his financial self-interest. Michael claims the parties were subject to a matrimonial agreement in their first marriage, and in fact, at oral argument, Michael's appeal counsel stated he had prepared the first matrimonial agreement. Michael cannot avail himself of the claim of detrimental reliance when he failed to take similar steps a second time to protect his self-interest, and he makes no claims to show how he was so prevented from ascertaining the truth. Furthermore, there were no claims that Danielle impeded him from verifying the truth. See John W. Stone Oil Distrib., L.L.C., supra at 109 ("we find that it is not reasonable for a sophisticated businessman ... to rely on an oral contract to sell immovable property [.]").
Third and finally, there are no allegations that claim or even suggest that Danielle was any sort of legal expert: she was not an attorney, notary public, or paralegal. There is nothing in his petition to show she had any expertise in matrimonial agreements, other than the fact that she had been subject to one in their previous marriage-as had Michael. Therefore, it was inherently unreasonable for Michael to rely on Danielle to prepare and provide a valid and enforceable legal document, considering there were no facts showing she had the expertise, credentials, and/or education or training to do so. To rely on a person without any expertise in the subject matter and whose own self-interest was adverse to his was per se unjustifiable and unreasonable.
On this issue of Michael's detrimental reliance, the trial court did not err in concluding he failed to state a cause of action. Even accepting his allegations as true, Michael's claims do not state facts upon which relief can be legally granted. This assignment of error is without merit.
Claims of Natural Obligation, Unclean Hands, and Equitable Estoppel
Michael effectively failed to brief his fifth assignment of error regarding his claims alleging the legal principles of natural obligation, unclean hands, and equitable estoppel; therefore, that assignment of error is abandoned. See, U.R.C.A. Rule 2-12.4, where an appellant fails to brief an assignment of error, the appeal court may deem that assignment abandoned. Lawson v. Lawson , 48,296 (La. App. 2 Cir. 7/24/13), 121 So.3d 769, 775.
CONCLUSION
For the reasons contained here, we affirm the judgment in favor of Danielle Dickerson Acurio Cage, which judgment granted her peremptory exception of no cause of action and dismissed all of the claims with prejudice of Michael Acurio. All costs of his appeal are assessed to Michael.
AFFIRMED.

Michael is a local orthopedic surgeon, and between their two marriages, the couple have three children.

Acurio v. Acurio , 50,709 (La. App. 2 Cir. 6/22/16), 197 So.3d 253.

Also pending in the trial court is the separate but related matter regarding the couple's community property. In that proceeding, Danielle filed a motion to consolidate the matters and also filed her peremptory exception, which were denied. There was a hearing in that matter on her motion, and Michael, in the instant appeal, attempted to have this record supplemented with the transcript from that hearing. However, this court denied the motion, recognizing that it was from another matter in the trial court. That order is contained in this appeal record.

As of the date of the hearing, Danielle had incurred about $7,000.00 in defending against Michael's claims, and her attorney was prepared to present unredacted bills for inspection by the trial court.

Danielle does not answer the appeal regarding the denial of her request for sanctions.

A.D. Freeman Professor of Civil Law, Tulane University Law School.