888 So.2d 300 (2004)
W. David THOMPSON, Plaintiff-Appellant,
v.
Angela Scriber LEE and Benjamin Franklin Marshall, IV, Defendants-Appellees.
No. 38,930-CA.
Court of Appeal of Louisiana, Second Circuit.
October 27, 2004.
*301 Crawford & Anzelmo by Brian E. Crawford, Monroe, for Appellant.
Mayer, Smith & Roberts by David F. Butterfield, Shreveport, for Appellee, Benjamin F. Marshall, IV.
*302 Before STEWART, CARAWAY and PEATROSS, JJ.
STEWART, J.
Dr. W. David Thompson ("Dr. Thompson") filed suit against Angela Scriber Lee (now Angela Cutler) and her attorney, Benjamin F. Marshall, IV ("Marshall") alleging defamation. Following a trial on the merits, the trial court returned judgment in favor of Cutler and Marshall. Dr. Thompson appeals. For the following reasons, we affirm.

FACTS
On January 28, 1997, Marshall issued a press release in connection with a lawsuit filed by Cutler against Dr. Thompson in the United States District Court for the Western District of Louisiana alleging violations of civil rights, intentional infliction of emotional distress and abuse of process. Dr. Thompson filed suit against Cutler and Marshall alleging defamation.
The record shows that this matter arose out of a domestic dispute between the former Angela Scriber Lee (now known as Angela Cutler) and her then-husband Greg Lee. The Lees apparently had a troubled marriage that was marked by physical altercations. Lee's sister, Tammy Greer ("Greer"), was a home healthcare nurse in Rayville. She was also a friend of Dr. Thompson, who then served as the Richland Parish Coroner. Dr. Thompson was also medical director at the Rayville Guest House where Cutler worked as a social worker.
On January 29, 1996, Greer contacted Dr. Thompson requesting a coroner's emergency certificate ("CEC") to compel Cutler's admission to a psychiatric hospital. Greer contended that Cutler had pulled an unloaded gun on Lee and the children in an altercation on January 27, 1996, and that Cutler had threatened to kill herself during the preceding four months. During the trial, Dr. Thompson admitted that he had been politically pressured into issuing CECs in the past and that Greer was aggressively pushing for a CEC to force Cutler's hospitalization.
Following his conversation with Greer, Dr. Thompson met with Lee for approximately ten minutes. He also met with Cutler for about fifteen minutes. Dr. Thompson concluded from his interview with Cutler that she did not appear to be homicidal or suicidal. Moreover, Cutler denied using a gun in any altercation with Lee. Dr. Thompson also discovered that Cutler had an appointment with her psychiatrist, Dr. Debora Murphy, the following day. Following these discussions, Dr. Thompson determined that Cutler was not in need of emergency psychiatric attention; yet, he told her that if she did not voluntarily admit herself to Brentwood Hospital in Shreveport, he would have her committed. He then filled out the CEC and gave it to Lee with instructions to use it if Cutler refused to admit herself.
Cutler then admitted herself to Brentwood as per Dr. Thompson's order, because she felt that she would lose her job in the event of an involuntary commitment. Upon admission, Cutler immediately signed a 72 hour release notice signifying her intent to leave at the earliest possible time under hospital rules. On January 31, 1996, Lee called the hospital to cancel family marital counseling claiming that his attorney advised him against continuing the counseling sessions.
On February 2, 1996, a Brentwood social worker contacted Lee to arrange a visit between Cutler and her children, but Lee refused the visit stating that he had obtained a restraining order and that he had no intention of allowing Cutler to return home. Cutler was released from Brentwood on February 5, 1996, and arrived at *303 home to find her personal effects in garbage bags locked in her car. Lee had also changed the locks to the house. Furthermore, as the result of a restraining order obtained by Lee, Cutler was unable to see her children for about three weeks. In the custody trial that ensued between Culter and Lee, Dr. Thompson testified that he bowed to political pressure in issuing the CEC and that Cutler was neither homicidal, suicidal, nor in need of emergency psychiatric care.
Following this testimony, Cutler decided to pursue a civil rights claim against Dr. Thompson. A petition was filed on January 27, 1997, alleging that Dr. Thompson had denied Cutler due process of law by issuing a commitment order resulting in her incarceration in a mental hospital. On January 28, 1997, Marshall issued a press release relating to Cutler's civil rights lawsuit. This press release is at the center of Dr. Thompson's claim of defamation and the instant appeal. He makes four complaints about the press release:
1. The press release falsely stated that Dr. Thompson illegally and improperly issued a commitment order;
2. The press release falsely stately that Cutler lost custody of her children as a result of the commitment order;
3. The press release falsely stated the Dr. Thompson was "politicked" into issuing the CEC; and
4. The press release falsely stated that Dr. Thompson's conduct is the kind that you would expect in the former Soviet Union or some third world country.
Marshall countered that he issued the press release for three reasons: (1) to alert the public as to improper conduct by a public official; (2) to possibly identify witnesses against Dr. Thompson; and (3) to deter coroners from issuing emergency certificates in the context of domestic litigation.
Dr. Thompson responded by filing a motion for Rule 11 sanctions, which was rejected by the trial court. However, the court did refer his complaint to the Louisiana State Bar Association which declined to take disciplinary action.
Following a trial on the merits, the jury returned a verdict dismissing Dr. Thompson's claims against Marshall and Cutler. This appeal ensued.

DISCUSSION
It is well settled that a district court's finding of fact may not be set aside on appeal in the absence of manifest error or unless it is clearly wrong. Leal v. Dubois, XXXX-XXXX (La.10/13/00), 769 So.2d 1182; Stobart v. State through Dept. of Transp. and Development, 617 So.2d 880 (La.1993); Connor v. Scroggs, 35,521 (La.App.2d Cir.6/12/02), 821 So.2d 542. Even though an appellate court may feel its own evaluations and inferences are more reasonable than those of the fact-finder, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. Rosell v. ESCO, 549 So.2d 840 (La.1989); Arceneaux v. Domingue, 365 So.2d 1330 (La.1978). An appellate court should not substitute its opinion for the conclusions made by the district court which is in a unique position to see and hear the witnesses as they testify. In re: A.J.F., XXXX-XXXX (La.6/30/00), 764 So.2d 47. The trier of fact is not disadvantaged by the review of a cold record and is in a superior position to observe the nuances of demeanor evidence not revealed in a record. Adkins v. Huckabay, 99-3605 (La.2/25/00), 755 So.2d 206.

*304 Defamation

A successful claimant in a defamation action must establish five elements: (1) defamatory words; (2) publication; (3) falsity; (4) malice; and (5) injury. Rogers v. Ash Grove Cement Co., 34,934 (La.App.2d Cir.11/02/01), 799 So.2d 841, writ denied, XXXX-XXXX (La.2/08/02), 808 So.2d 351. Defamatory words are those which harm the reputation of another "so as to lower him in the estimation of the community or to deter others from associating with him." Id.
It is well settled that truth is an absolute defense to an action for defamation. Louisiana Claims Adjustment Bureau, Inc. v. State Farm Ins. Co., 38,709 (La.App.2d Cir.6/23/04), 877 So.2d 294; Wyatt v. Elcom of Louisiana, Inc., 34,786 (La.App.2d Cir.6/22/01), 792 So.2d 832; Bell v. Rogers, 29,757 (La.App.2d Cir.8/20/97), 698 So.2d 749.
Following our review of the record, we conclude that the statements in the press release are true. The first sentence of the first paragraph merely indicates that Cutler filed a civil rights suit and accurately describes the allegations of the complaint.
The second paragraph asserts that Cutler's commitment was involuntary. The testimony reveals that she was, in fact, coerced into committing herself for psychiatric care by Dr. Thompson. He admitted that she was not in need of emergency psychiatric care and that his action was politically motivated.
The record also shows that the impact of Cutler's involuntary commitment was felt in the context of her custody dispute with Lee. Within 72 hours of her admission to the hospital, Lee hired an attorney, cancelled marital counseling, and obtained a restraining order based upon the CEC. Moreover, Lee changed the locks on their home and placed Cutler's belongings into her car.
As to the statement in the press release equating Dr. Thompson's behavior to that found in the Soviet Union or third world countries, we find this to be a statement of opinion insufficient to sustain an action for defamation.
The First Amendment freedoms afford, at the very least, a defense against defamation actions for expressions of opinion. Ray v. Bossier City, 37,708 (La.App.2d Cir.10/24/03), 859 So.2d 264; Fitzgerald v. Tucker, 98-2313 (La.6/29/99), 737 So.2d 706; Mashburn v. Collin, 355 So.2d 879 (La.1977). A pure statement of opinion, which is based totally on the speaker's subjective view and which does not expressly state or imply the existence of underlying facts, usually will not be actionable in defamation. Bussie v. Lowenthal, 535 So.2d 378 (La.1988). That is because falsity is an indispensable element of any defamation claim, and a purely subjective statement can be neither true nor false. Id. The opinion may be ostensibly in the form of a factual statement if it is clear from the context that the speaker did not intend to assert another objective fact but only his personal comment on the facts which he had stated. (Emphasis added). Mashburn, supra. Another form of protected speech is hyperbole, which cannot reasonably be interpreted as stating actual fact. Greenbelt Cooperative Publishing, Ass'n v. Bresler, 398 U.S. 6, 90 S.Ct. 1537, 26 L.Ed.2d 6 (1970); Baxter v. Scott, 37,092 (La.App.2d Cir.5/16/03), 847 So.2d 225. We conclude that the foregoing statement in the press release was merely a statement of opinion or hyperbole that will not support an action in defamation.

CONCLUSION
Finding no error in the jury's conclusion, we affirm the judgment dismissing *305 Dr. Thompson's claim of defamation. Costs assessed to the appellant.
AFFIRMED.