# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 10, 2020

Lyle W. Cayce
Clerk

No. 20-30009
Summary Calendar

Emile Tilson, Jr.; Debra Tilson,

*Plaintiffs—Appellants*,

*versus*

DISA, Incorporated; DISA Global Solutions,
Incorporated,

*Defendants—Appellees*.

Appeal from the United States District Court
for the Middle District of Louisiana
USDC No. 3:17-CV-240

Before Jolly, Elrod, and Graves, *Circuit Judges*.

Per Curiam:*

Emile Tilson lost his job at an Exxon petrochemical plant after he failed a drug test. He and his wife then sued most every party involved with

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 20-30009

the test, including the administrator of the drug testing program, DISA.[1] The district court dismissed the Tilsons' claims against DISA for violations of the Louisiana Drug Testing Statute ("LDTS"), negligence, and defamation because, respectively, the LDTS did not apply, there was no evidence to support a negligence claim, and any statements DISA published were true. We affirm.

## I.

Mr. Tilson worked as a boilermaker, pipefitter, and as a member of the reactor crew, at Exxon Mobil's Baton Rouge petrochemical plant. His employer was an Exxon contractor named Turner Industries. Exxon requires anyone working on site to pass a drug test whether they are employees of Exxon or employees of a contractor like Turner. As such, Exxon joined a centralized drug testing program with which all contractors on their site must comply.

DISA is a third party that contracts with employers to administer drug screening programs. To ensure compliance across multiple sites, DISA maintains a database that all employers, like Exxon and Turner, can access in order to tell if employees are complying with the substance abuse policy. This database prevents employees terminated by one contractor for failing a drug test from regaining employment at the facility by going to work for a different contractor. Compliant employees bear an "active" status in the database, while noncompliant employees—e.g., those who have failed a drug test or refused testing—are listed as "inactive." No one can work at Exxon's Baton Rouge facility without maintaining active status.

---

[1] DISA, Inc., and DISA Global Solutions, Inc., are collectively referred to as DISA.

No. 20-30009

DISA's role in Exxon's and Turner's drug testing program was administrative and logistical. DISA provided Turner with a list of approved specimen collection centers, forwarded specimens for testing at third-party labs, reported positive results to a medical review officer, and entered test results in the database. DISA did not collect or test specimens. And the only direct relationship between Mr. Tilson and DISA involved a consent agreement that allowed DISA to release his test results to his employer.

In September 2016, a Turner Industries employee collected a urine sample from Mr. Tilson during a random drug test and sent that sample to another third party, Clinical Reference Laboratories ("CRL"), where it tested positive for marijuana metabolites. After a confirmatory test, Mr. Tilson's test results showed a marijuana metabolite level of 14 ng/ml, which exceeded Exxon's cutoff of 10 ng/ml.

After the positive test, the specimen was forwarded to a medical review officer (an independent, third party hired to ensure the integrity of drug tests) who worked for a company called University Services. The medical review officer asked Mr. Tilson whether he had an explanation for the results. Because Mr. Tilson had no legitimate reason for testing positive, the results were reported to DISA. DISA then changed Mr. Tilson's status in its database to inactive, which led Turner Industries to fire him.

Appellants (Mr. Tilson and his wife) then filed a lawsuit that brought a multitude of claims against several defendants. The Tilsons alleged violations of the LDTS, employment discrimination, negligence, defamation, violations of constitutional rights, invasion of privacy, tortious interference with a contract, loss of consortium, violations of several federal statutes, including the Americans with Disabilities Act and HIPAA, and violations of various state statutes. These claims were added and discarded through the

No. 20-30009

Tilsons' five amended complaints, nonsuits against various defendants, and briefing on summary judgment.

After dismissing the claims against the other defendants, the district court granted summary judgment on all of the Tilsons' claims against DISA. The Tilsons' appeal challenges the district court's grant of summary judgment on their claims brought under the LDTS and their state law negligence and defamation claims.

## II.

We review a grant of summary judgment de novo. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001). Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment may be affirmed for any reason supported by the record. *Lyles v. Medtronic Sofamor Danek, USA, Inc.*, 871 F.3d 305, 310 (5th Cir. 2017).

## III.

Mr. Tilson argues that DISA violated the LDTS by setting the threshold for reporting a positive test based on marijuana metabolites too low. *See* LA. STAT. ANN. § 49:1005(B). The LDTS establishes protocols for drug testing. If an organization abides by those protocols, the LDTS shields it from certain types of lawsuits related to administering drug tests. *Id.* § 1012(B). As part of that scheme, the LDTS says that organizations should use a cutoff of 50 ng/ml for marijuana metabolites, meaning that if an organization wants to comply with the statute, any test below 50 ng/ml should not be reported as a positive drug test. *Id.* § 1005(B). So in one sense, Mr. Tilson is right, the cutoff applied to his test was lower than what the statute mandates, and a compliant organization would not have reported a positive test based on those results.

But the requirements of the LTDS are inapplicable here because the statute states that its provisions do not apply to "any person, firm, or corporation engaged or employed in the exploration, drilling, or production of oil or gas in Louisiana . . . ." La. Stat. Ann. § 49:1002(H). It also states that the cutoff level for marijuana testing of 50 ng/ml "may be reduced or modified by any person, firm, or corporation engaged in construction, maintenance, or manufacturing at any refining or chemical manufacturing facility." *Id.*

As a boilermaker, pipe fitter, and member of the reactor crew at Exxon's Baton Rouge petrochemical facility, Mr. Tilson is a "person . . . engaged or employed in the . . . production of oil or gas in Louisiana . . . ." *Id.* Moreover, his employer, Turner Industries, is a "firm[] or corporation engaged in construction, maintenance, or manufacturing at [a] refining or chemical manufacturing facility[,]" which means it can reduce the cutoff level for marijuana testing below 50 ng/ml. *Id.*

Mr. Tilson's situation is like the one addressed by the Louisiana appellate court in *Russo v. Int'l Drug Detection, L.L.C.*, 18-93 (La. App. 5 Cir. 5/30/18), 250 So. 3d 1100. There the court found that a communications technician who serviced offshore oil platforms was employed in the production of oil and gas and therefore precluded from relying on the LDTS to show that the laboratory that tested his sample breached a duty of care owed to him by failing to comply with the LDTS. *Id.* at 1103–04. Consequently, the court dismissed the technician's negligence claim. *Id.* at 1104.

Based on the above, the district court's grant of summary judgment on claims brought under the LDTS is affirmed.

IV.

The district court found that the Tilsons, despite five amended complaints, had failed to put forth facts or an argument that supported a negligence claim. That claim fares no better on appeal.

The Tilsons' argue that any violation of the LDTS amounts to negligence *per se* or that the LDTS creates a duty of care that DISA breached. But because DISA cannot violate an inapplicable statute, both arguments fail.

DISA played an administrative role here, and the Tilsons do not explain how DISA would be liable for negligent collection of a specimen, given that it did not conduct the drug test (administered by a Turner employee), provide lab analysis (analyzed by CRL), or conduct a medical review (reviewed by University Systems' employee).

The Tilsons also fail to show that DISA acted negligently by failing to exclude alternative reasons for Mr. Tilson's positive test before reporting him as inactive. The sole piece of evidence on this point comes in the form of a second drug test administered by another company five days after the first that returned negative. But subsequent negative drug tests are often of little evidentiary value. *See, e.g., Pride v. Laboratory Corp. of America*, 376 F. App'x 925, 927–28 (11th Cir. 2010); *Meza v. Dep't of Homeland Sec.*, 275 F. App'x 987, 991–92 (Fed. Cir. 2008). And, as the Tilsons' expert admits, the second test may have been negative simply because the second lab applied a higher cutoff for marijuana metabolites than the one used by Turner and Exxon.

The Tilsons submitted three affidavits that could be construed as attempts to show that DISA played a role in overseeing an allegedly negligent drug testing program. But they did not discuss these affidavits in briefing before the district court and did not include their own statement of undisputed material facts for the district court to review. As the district court

noted, it was under no obligation to scour the record looking for issues of material fact. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

In any event, the affidavits are insufficient. One affidavit contains no facts pertinent to Mr. Tilson. Another addresses vague concerns with drug testing procedures at Turner Industries that the affiant observed in 2007–2011, long before Mr. Tilson's drug test. And the final affidavit is from a former employee who worked at Exxon's Corpus Christi facility who was fired in January 2016, so his statements have nothing to do with Mr. Tilson's test or the testing procedures in place at the Baton Rouge facility in September 2016.

Consequently, the district court's grant of summary judgment on the Tilsons' negligence claim is affirmed.

V.

Defamation requires the Tilsons to show that DISA published a false and defamatory statement to a third party that resulted in an injury. *Kennedy v. Sheriff of E. Baton Rouge*, 935 So.2d 669, 674 (La. 2006).

The Tilsons' defamation claim fails because the results DISA released were true, and its classification of him as inactive was correct considering Turner Industries' and Exxon's policies. No evidence exists to contradict that Mr. Tilson's test showed marijuana metabolite levels that were in excess of the 10 ng/ml cutoff. Neither DISA's reporting of his 14 ng/ml test results as positive nor its classification of Mr. Tilson as inactive was false. Since truth is a complete defense to defamation, the district court rightly granted summary judgment in favor of DISA on this claim. *Thompson v. Lee*, 38-930 (La. App. 2 Cir. 10/27/04), 888 So. 2d 300, 304, *writ denied*, 2004-2936 (La.

No. 20-30009

2/4/05), 893 So. 2d 873 ("It is well settled that truth is an absolute defense to an action for defamation.").

AFFIRMED.