366 So.2d 983 (1978)
Frank HARRISON, Jr.
v.
UNIROYAL, INC. et al.
No. 12371.
Court of Appeal of Louisiana, First Circuit.
December 27, 1978.
*984 Glenn P. Marcel, Zachary, of counsel for plaintiff-appellant Frank Harrison, Jr.
William R. D'Armond, Baton Rouge, of counsel for defendants-appellees Uniroyal, Inc., and James A. Daily.
Before ELLIS, BLANCHE and LOTTINGER, JJ.
BLANCHE, Judge.
Plaintiff, Frank Harrison, Jr., appeals the denial of recovery in his action seeking damages for defamation.
It is alleged that defendants, Uniroyal, Inc., and James A. Daily, defamed Harrison when they filed a separation notice with the Department of Employment Security which stated that he had been "[d]ischarged for misconduct connected with his work (falsification of records)."
Harrison was hired by Uniroyal at its Baton Rouge plant on May 9, 1974. On November 18, 1975, he was injured in a motorcycle accident. On November 24, 1975, Harrison, through his wife, applied for accident and health benefits (hereinafter referred to as "A & S") under the Uniroyal program. This program was a negotiated benefit, the purpose of which was to provide injured or sick employees with compensation when they had no other means of income. Harrison drew these benefits for the maximum forty-two week period, terminating on November 16, 1976.
In order to continue receiving benefits during that period, Harrison was required to submit periodic status reports from his physician. On July 30, 1976, Uniroyal received a report from Dr. John F. Loupe, Harrison's physician, which stated in response to the specific inquiry of whether the patient would be able to return to work the following answer: "No: possible 4 months." Uncontradicted testimony indicated that the above inquiry was the determining factor in whether an employee received A & S benefits.
In August, Harrison offered to return to work but Uniroyal declined, noting that his July 30 status report indicated he was still unable to work and believing he should not work until released by his doctor. After this, Harrison filed a claim for unemployment compensation which was denied. Subsequently, he appealed to Appeals Referee, Dennis Dykes. James A. Daily, the Industrial Relations Manager at Uniroyal who was in charge of all personnel, testified that no one from Uniroyal attended this hearing since they were advised by letter that their appearance was unnecessary. The Referee denied Harrison's claim.
Harrison sought and obtained review by the Board of Review, which also denied benefits. At some time during this period Harrison obtained for the Department of Employment Security another note dated September 28, 1976, from Dr. Loupe's office indicating he was available as of July 29, 1976, for light duty work. This note was never delivered to Uniroyal and contradicted the July 30 status report in the possession of Uniroyal.
Harrison then sought and received judicial review by the trial court, alleging he was available for work as of July 29, 1976, and therefore was entitled to benefits. Hearing was originally set for December 17, 1976, but was later postponed until January 14, 1977. James Daily attended the hearing on December 17, 1976, and was informed that Uniroyal would receive notice of the new trial date. However, the uncontradicted testimony of Daily was to the effect that no notice was ever received and no representative of Uniroyal attended the court hearing.
*985 Judgment was rendered in favor of Harrison on January 14, 1977, and signed January 27, 1977, reversing the findings of the Board of Review and ordering that unemployment benefits be paid. The trial judge apparently felt that while plaintiff was unable to work at his former position, he was "available for work" under the statute for other types of employment. Daily was unaware of the rendering or reasons for this judgment.
In the meantime, Harrison had returned to work in January of 1977. On February 22, 1977, he received unemployment benefits retroactively, apparently from July 25, 1976. At the same time the corporate office of Uniroyal in Connecticut was contacted and instructed that unemployment benefits had been paid to Harrison. Daily was informed of this by telephone on February 22 or 23, 1977. Daily examined the A & S benefits file on Harrison and noticed there was a four-month overlap between July 25, 1976, and November 16, 1976, where Harrison received both A & S payments and unemployment compensation. Daily became suspicious that a falsification had occurred.
A meeting was held on the morning of February 23, 1977, attended by Daily, who had ultimate authority for hiring and firing all personnel; Glyn D. Harding, Maintenance General Foreman, who was Harrison's immediate supervisor; and Charles C. LeBlanc, the Labor Relations Supervisor, whose job was to see that discipline was administered fairly. The three men all testified that they reviewed the file, particularly the July 30, 1976, status report indicating that Harrison would be unable to work for four months. They also testified that they understood the general rule was that a person had to be able to work in order to receive unemployment compensation, yet one had to be unable to work to receive benefits under the A & S plan at Uniroyal. Therefore, the condition that qualified one for unemployment compensation presumably disqualified one from A & S benefits. Based upon the apparent contradiction, the three men concluded that some falsification must have occurred.
Harrison was then called before the three men and asked to explain the contradiction. Having been unable to explain satisfactorily how he was able to receive both, he was informed that his position with Uniroyal was terminated for falsification of records.
Pursuant to statute, Uniroyal then notified the Department of Employment Security of Harrison's discharge, setting out the reason as being "misconduct connected with his work (falsification of records)."
In response, Harrison filed this defamation suit seeking $1.34 million. The trial court held, without determining whether the statement was true or false, that the communication was subject to a qualified or conditional privilege. The court found that the defendants acted in good faith and without malice and that there was no evidence of reckless disregard for the truth. The trial court also found the communication was made by a person with interest in the subject matter to another person who had a corresponding interest. Since the communication was privileged, the trial court dismissed Harrison's action. We affirm.
Plaintiff assigns three specifications of error which all go to the same issue, i. e., that the trial judge erred in finding the defendants acted in good faith.
At the outset, it is important to note that this is not a wrongful discharge case, it is a defamation action. The sole issue is whether defendants' communication to the Department of Employment Security defamed plaintiff.
Under our law, a person making a statement may enjoy:
"* * * a `qualified' or conditional privilege, applicable if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter *986 in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate."
Toomer v. Breaux, 146 So.2d 723, 725 (La. App. 3rd Cir. 1962). See also, Boyd v. Community Center Credit Corporation, 359 So.2d 1048 (La.App. 4th Cir. 1978); Alford v. Georgia-Pacific Corporation, 331 So.2d 558 (La.App. 1st Cir. 1976), writ refused, 334 So.2d 427 (1976); Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2nd Cir. 1975); Cormier v. Blake, 198 So.2d 139 (La.App. 3rd Cir. 1967). This privilege was recently held applicable to communications between an employer and the Department of Employment Security in a case quite similar to the one at bar. Boyd v. Community Center Credit Corporation, supra.
Plaintiff claims the trial judge erred in finding that defendants acted in good faith. The test for whether a communication is made in good faith so as to allow defendant to invoke the qualified privilege set forth above was stated in Cormier v. Blake, 198 So.2d 139, 144 (La.App. 3rd Cir. 1967), as follows:
"* * * [O]ne of the requirements which must be met before a publication is entitled to such a qualified or conditional privilege is that it be made in good faith. This means that the person making the statement must have reasonable grounds for believing that it is true and he must honestly believe that it is a correct statement. A statement is not made in good faith if there is not just or probable cause to believe it is true, or if the person making it does not have reasonable grounds for believing that it is true and he is actuated by malice and ill will. Waldo v. Morrison * * * [220 La. 1006, 58 So.2d 210 (1952)]."
Implicit in the trial judge's finding that defendants were in good faith is a finding that they honestly believed, and had reasonable grounds for believing, a falsification had occurred and that the communication was not motivated by ill will or malice. It is our opinion that these findings are supported by the evidence.
All three men testified that they did not know the plaintiff personally and did not hold any animosity toward him. All testified that they honestly felt on February 23, 1977, the plaintiff had falsified his A & S status report. They all knew that in order to receive unemployment compensation one must be able to work and all knew that under Uniroyal's A & S program one can only receive benefits if he is unable to work. Thus, in their minds, the condition that qualifies one for employment compensation disqualifies one for A & S benefits under Uniroyal's plan. The decision of Daily to fire Harrison for misconduct was not a unilateral one. A meeting was called at which Harrison was given an opportunity to explain the charges against him. Albeit that Daily may have been mistaken that Harrison in fact falsified records, the trial judge had ample evidence to conclude that he was in good faith and had reasonable grounds on which to base his judgment that a falsification had occurred.
For the above and foregoing reasons, the judgment of the trial court is correct and is affirmed, plaintiff-appellant to pay all costs of this appeal.
AFFIRMED.