SEXTON, Judge Pro Tem.
11 Plaintiff, Jeanette L. Watson, appeals a judgment granting directed verdicts in favor of Defendants Willis-Knighton Medical Center (Willis-Knighton), Peggy Gavin and Jerry Fielder, dismissing her claims of defamation arising out of her termination of employment by Willis-Knighton. For the reasons stated herein, we affirm.

*857
FACTS

The parties filed a list of “Uncontested Issues of Fact,” which include most of the following summary of events. Ms. Watson was employed by Willis-Knighton from May 30, 1990, to October 24, 2000. In 1997, she became the office supervisor at Willis-Knighton’s physician’s network clinic in Haughton (“the clinic”). Ms. Watson had two corrective actions in her personnel file (Nov. 1999 and Jan. 2000) and the testimony reflects that she had received numerous complaints from coworkers about her unprofessional behavior and brash attitude. On Saturday, June 3, 2000, the clinic was open from 8:00 a.m. to 12:00 p.m. and was staffed by nurse Dela-na Ester and front desk clerk, Defendant Sharon Smith. At 10:00 a.m., Ms. Ester spoke with Ms. Watson on the telephone and Ms. Watson then drove to the clinic. While there, over a period of 30-45 minutes, Ms. Watson drank two beers on the back steps of the clinic in the presence of Ms. Ester and Ms. Smith.
Nothing was said about the incident until October 3, 2000, when Ms. Smith wrote a letter to her supervisor complaining about Ms. Watson. In the letter, which was delivered to Peggy Gavin, Director of Physician Services, Ms. Smith related the beer drinking incident of June 3. Ms. Gavin 12met with Ms. Smith and Ms. Ester and confirmed the validity of the complaint. Ms. Gavin then discussed the incident with Jerry Fielder, Director of Human Resources for Willis-Knighton. Mr. Fielder secured permission to terminate Ms. Watson if she admitted to the drinking incident. He then prepared a corrective action form indicating her termination in the event Ms. Watson admitted the incident. The form states:
EMPLOYEE CONTINUES TO EXHIBIT CONDUCT THAT IS UNPROFESSIONAL, UNBUSINESSLIKE AND IMPROPER FOR A SUPERVISOR. IN ADDITION EMPLOYEE HAS PARTICIPATED IN AN ACTIVITY THAT HAS DISCREDITED THE HEALTH SYSTEM AND ITS REPUTATION. MAINLY EMPLOYEE CONSUMED ALCOHOL (BEER) ON HEALTH SYSTEM PROPERTY.
Subsequently, at a meeting with Ms. Gavin and Mr. Fielder, Ms. Watson admitted the incident and was terminated. Ms. Watson refused to sign the corrective action form indicating her termination. The paperwork submitted to the Department of Labor — Office of Employment Security (“OES”) cited as the reason for termination:
TERMINATION — EMPLOYEE CONTINUES TO EXHIBIT UNPROFESSIONAL, UNBUSINESSLIKE, AND IMPROPER CONDUCT. FOREMOST-EMPLOYEE CONSUMED ALCOHOL (BEER) ON HEALTH SYSTEM PROPERTY.
Following her termination, Ms. Watson filed suit against Willis-Knighton, Ms. Gavin, Mr. Fielder and Ms. Smith. She asserted claims of age and gender discrimination and defamation.[1] A jury trial began on March 21, 2011; and, at the close of Ms. Watson’s evidence, Defendants | amoved for directed verdicts. The trial judge granted a directed verdict in favor of Willis-Knighton, Ms. Gavin and Mr. Fielder, but denied the motion as to Ms. Smith. At the close of all the evidence, the trial *858 judge granted a directed verdict in favor of Ms. Smith.
The trial judge found that the statement of consuming alcoholic beverages on company property could be defamation per se; however, Ms. Watson failed to show that there had been publication. He further found a qualified privilege in favor of Willis-Knighton in its publication to the OES. This appeal ensued.

DISCUSSION

On appeal, Ms. Watson assigns two alleged errors: 1) the trial judge erred in granting the directed verdict in favor of Ms. Gavin and Mr. Fielder because there had been no publication and 2) the trial judge erred in granting the directed verdict in favor of Willis-Knighton on the basis that there existed a qualified privilege for statements made to the OES. While Ms. Watson does not include the directed verdict in favor of Ms. Smith in her assignments of error, she references Ms. Smith as an appellee throughout her brief.
A motion for directed verdict is a procedural device available in jury trials to promote judicial efficiency. Fields v. Walpole Tire Service, L.L.C., 45,206 (La.App.2d Cir.5/19/10), 37 So.3d 549, writ denied, 10-1430 (La.10/1/10), 45 So.3d 1097. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the |4movant’s opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant that reasonable jurors could not have arrived at a contrary conclusion. Id.; see also La. C.C.P. art. 1810. The trial court has much discretion in deciding to grant or deny the motion. Fields, supra.
The standard of review of a trial judge’s granting of a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. Dowles v. Conagra, Inc., 43,074 (La.App.2d Cir.3/26/08), 980 So.2d 180. In addition, the appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. Id.
Defamation is a tort involving the invasion of a person’s interest in his or her reputation and good name. Kennedy v. Sheriff of East Baton Rouge, 05-1418 (La.7/10/06), 935 So.2d 669, citing Costello v. Hardy, 03-1146 (La.1/21/04), 864 So.2d 129. Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. The fault requirement is generally referred to in the jurisprudence as malice, actual or implied. Kennedy, supra; Costello, supra. Thus, in order to prevail on a defamation claim, a plaintiff must prove that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages. Trentecosta v. Beck, 96-2388 (La.10/21/97), 703 So.2d 552. To be actionable, the words must|abe communicated or published to someone other than the plaintiff. Wyatt v. Elcom of La., Inc., 34,786 (La.App.2d Cir.6/22/01), 792 So.2d 832. In addition, it is well settled that truth is an absolute defense to defamation. Thompson v. Lee, 38,930 (La.App.2d Cir.10/27/04) 888 So.2d 300, writ denied, 04-2936 (La.2/4/05), 893 So.2d 873, citing Louisiana Claims Adjustment Bureau, Inc. v. State Farm Ins. Co., 38,709 (La.App.2d Cir.6/23/04), 877 So.2d 294, writ denied, 04-1890 (La.10/29/04), 885 So.2d 595; Wyatt, supra, and Bell v. Rog *859 ers, 29,757 (La.App.2d Cir.8/20/97), 698 So.2d 749.
If even one of the required elements of the tort is lacking, the cause of action fails. Even when a plaintiff makes a prima facie showing of the essential elements of defamation, recovery may be precluded if the defendant shows either that the statement was true or that it was protected by a privilege, absolute or qualified. Wyatt, supra.
By definition, a statement is defamatory if it tends to harm the reputation of another so as to lower the person in the estimation of the community, deter others from associating or dealing with the person or otherwise expose the person to contempt or ridicule. Kennedy, supra; Costello, supra. In Louisiana, defamatory words have traditionally been divided into two categories: those that are defamatory per se and those that are susceptible of a defamatory meaning. Words which expressly or implicitly accuse another of criminal conduct or which by their very nature tend to injure one’s personal or professional reputation, without considering | (¡extrinsic facts or circumstances, are considered defamatory per se. Kennedy, supra.
When a plaintiff proves publication of words that are defamatory per se, falsity and malice (or fault) are presumed, but may be rebutted by the defendant. Kennedy, supra; Costello, supra. Injury may also be presumed. Id. When the words at issue are not defamatory per se, a plaintiff must prove, in addition to defamatory meaning and publication, falsity, malice (or fault) and injury. Id.
In the case sub judice, Ms. Watson claims that the defamatory words were the statements in the Corrective Action Form and, specifically, that she drank beer on the steps of the clinic, on Willis-Knigh-ton property. She challenges the trial judge’s finding that the alleged defamatory words were not published to third parties. Ms. Watson cites the following as publication:
• Corrective Action Report of October 24, 2000, that was prepared by Mr. Fielder and signed by him and Ms. Gavin;
• Appellees’ admission in their Answer that two doctors were advised that Ms. Watson would not be returning to work;
• Meeting between Ms. Gavin and Mr. Fielder and Ms. Ester and Ms. Smith wherein the latter were issued written corrective action warnings and the consumption of the beer was discussed and such was included on the written corrective action forms issued to Ms. Ester and Ms. Smith;
• Logical inference of publication because other employees found out about the beer drinking and avoided her; and
• The multiple filings with the OES containing statements about the consumption of beer on the premises.
| yFirst, and importantly, we are constrained to agree with Defendants that the statements claimed by Ms. Watson to be defamatory are true-an absolute defense to a claim of defamation. Thompson, supra. Ms. Watson stipulated as an uncontested fact that she did, in fact, have two prior corrective action warnings. Further, there was testimony as to the numerous complaints that had been levied against her for unprofessional behavior. Finally, Ms. Watson admitted and stipulated that she drank two beers on the back steps of the clinic. On appeal, Ms. Watson makes a valiant effort to argue that she did not know that the area was actually Willis-Knighton property; however, we find this argument disingenuous and unpersuasive. The truth of the statement that Ms. Wat *860 son was fired for unprofessional and unbu-sinesslike behavior is supported in this record.
Assuming, arguendo, that the statements were defamatory per se, as the trial judge intimated, the record overwhelmingly supports the finding that, as to Ms. Gavin and Mr. Fielder, the element of unprivileged publication to a third party is lacking. The Corrective Action Form created by Mr. Fielder and shared with Ms. Gavin was presented to Ms. Watson and she refused to sign it. It was then made part of Ms. Watson’s personnel file and was not communicated to a third party. Ms. Watson testified that her coworkers quickly gained knowledge of the termination and the reason therefor and avoided her. She argues that her former coworkers’ knowledge of the incident yields a “logical inference” that the incident was communicated to them. Inference does not constitute publication. Publication must be proven, not presumed or inferred. Kennedy, supra; \ ¿Costello, supra. Further, Ms. Ester and Ms. Smith were both present when Ms. Watson drank the beer, so the communication with them during their own corrective action meetings is not publication to a third party. Finally, only one of the two doctors who allegedly were told about Ms. Watson’s termination testified and could not confirm that she had heard, or been advised, of the reasons for Ms. Watson’s termination. In the absence of the element of publication, Ms. Watson’s claim fails.
Regarding the claim against Willis-Knighton, Ms. Watson challenges the trial judge’s finding that its communication to the OES was protected by a qualified privilege. Ms. Watson argues that a qualified privilege only extends to public figures or matters of public concern; and, since she is a private citizen, the privilege does not shield Willis-Knighton’s statements to the OES. We disagree.
Otherwise defamatory publication enjoys a qualified conditional privilege if made in good faith, on any subject matter in which the person communicating has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty. Smith v. Our Lady of the Lake Hosp., Inc., 93-2512 (La.7/5/94), 639 So.2d 730. A statement is made in good faith when it is made with reasonable grounds for believing it to be true. Ruffin v. Wal-Mart Stores, Inc., 01-0613 (La.App.lst Cir.5/10/02), 818 So.2d 965, writ denied, 02-1636 (La.9/30/02), 825 So.2d 1200. The privilege, it has been held, arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free |acommunication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate. Kennedy, supra, citing Toomer, supra. Jurisprudence establishes that communications between an employer and the Department of Employment Security generally enjoy a qualified privilege. Kosmitis v. Bailey, 28,585 (La.App.2d Cir.12/20/96), 685 So.2d 1177.
Applying the above jurisprudence to the instant case, we find that the trial judge correctly concluded that Willis-Knighton enjoys a qualified privilege in its communications with the OES regarding the reasons for Ms. Watson’s termination. Willis-Knighton made the communication in good faith, i.e., it had a reasonable belief that the reasons for termination were true and that the statements were correct. Ruffin, supra. See also Harrison v. Uniroyal Inc., 366 So.2d 983 (La.App. 1st Cir.1978), and cases cited therein. An employer has an interest in, and a duty to, accurately report to the OES. Further, the OES has an interest in accurately process *861 ing applications for unemployment benefits. The communication to the OES was qualifiedly privileged.
In summary, we find that reasonable jurors could not have arrived at a different conclusion than the trial judge did regarding the defamation claims made by Ms. Watson. Dowles, supra. Not only were the statements true, the evidence presented simply did not satisfy the elements for an action in | ^defamation against any of the four defendants.[2] The directed verdicts were properly granted.

CONCLUSION

For the foregoing reasons, the directed verdicts in favor of Defendants Willis-Knighton Medical Center, Peggy Gavin and Jerry Fielder dismissing the claims of Plaintiff Jeanette L. Watson are affirmed. Costs of appeal are assessed to Jeanette L. Watson.
AFFIRMED.

. No evidence was presented at trial in support of Ms. Watson’s age and gender discrimination claims and the judgment below grants directed verdicts in favor of all four Defendants on those claims. The only issue before the trial court was defamation; and, accordingly, that is the only issue before us on appeal.

. While Ms. Smith was not named in the assignments of error, Ms. Watson presents arguments regarding her claim against Ms. Smith in her brief. The only communication about Ms. Watson by Ms. Smith was to her supervisors in the October 3 letter. This communication is subject to a qualified privilege. Bell, supra. The directed verdict on the claim against Ms. Smith was properly granted.