Judgment rendered November 6, 2024
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 55,818-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

CASSANDRA CROW                                    Plaintiff-Appellant

versus

RICHARD FOSTER and STATE OF                       Defendants-Appellees
LOUISIANA, through the
DEPARTMENT OF
TRANSPORTATION AND
DEVELOPMENT

* * * * *

Appealed from the
Third Judicial District Court for the
Parish of Union, Louisiana
Trial Court No. 49,656

Honorable Thomas W. Rogers, Judge

* * * * *

MORRIS & DEWETT, LLC                              Counsel for Plaintiff -
By: B. Trey Morris                               Appellant
    Elizabeth A. Hancock
    Eric M. Whitehead

THE LAW FIRM OF EDDIE CLARK
AND ASSOCIATES, LLC
By: Eddie M. Clark

LIZ MURRILL                                      Counsel for Defendants-
Attorney General                                 Appellees

JEANNIE C. PRUDHOMME
C. BRYAN RACER
CHARLEN T. CAMPBELL
Assistant Attorneys General

* * * * *

Before STONE, MARCOTTE, and ELLENDER, JJ.

**MARCOTTE, J.**

This appeal arises from the Third Judicial District Court, Parish of Union, the Honorable Thomas W. Rogers presiding.  Plaintiff, Cassandra Crow ("plaintiff" or "Ms. Crow") appeals a jury verdict in which defendants, Richard Foster ("Foster") and the State of Louisiana, through the Department of Transportation and Development ("DOTD") (Foster and DOTD collectively referred to as "defendants" or "appellees"), were found not liable to Ms. Crow for injuries she sustained in an accident with a motor grader in Union Parish, Louisiana.  For the following reasons, we affirm.

## FACTS

On March 26, 2020, Ms. Crow was traveling along La. Hwy. 143 and approached its intersection with La. Hwy. 2 with the intention of turning left. At the time, Foster and other DOTD personnel were operating a mobile work zone near the intersection.  Foster was driving a John Deere motor grader[1] reshaping the shoulder of the roadway.

There is a dispute between the parties as to which lane of traffic was open for eastbound motorists on La. Hwy. 2 at its intersection with La. Hwy. 143.  DOTD claims that the mobile operation closed the eastbound lane of travel such that eastbound traffic was temporarily directed to the westbound lane.  Ms. Crow contends that the eastbound lane was not closed.  However, the parties do not dispute that there were no flagmen at the intersection directing traffic.

---

[1]  A motor grader is a large piece of mobile equipment with a 14-foot blade used by DOTD in the grading of roadways.

Seeing no flagmen, Ms. Crow turned left onto La. Hwy. 2 in the eastbound lane and positioned her car behind the motor grader and in front of a backhoe also working on the mobile operation. Unaware of any motorists behind him, Foster then began reversing the motor grader until he collided with the front of Ms. Crow's vehicle, causing her harm.

On December 30, 2020, Ms. Crow filed a petition for damages against Foster and DOTD, alleging that she suffered injuries due to the negligence of Foster and DOTD under a theory of *respondeat superior*. A motion in limine was granted in favor of the DOTD as to general negligence at the scene, etc. The court found that the only issue of liability to be determined was the fault of the DOTD employee Foster. Ms. Crow claimed that as she approached the intersection, she noticed a construction vehicle approximately 50 yards to her right, and another similar construction vehicle approximately 100 yards to her left. Ms. Crow claimed that she made a complete stop at the stop sign and looked both ways but that no one from DOTD provided any guidance. She eventually turned left into the eastbound lane of travel on La. Hwy. 2.

Once she finished her left turn, Ms. Crow stated that she continued eastbound in the right lane on La. Hwy. 2 until she encountered a motor grader driven by Foster. The motor grader stopped, and plaintiff came to a stop behind it. The motor grader then began backing up. Plaintiff claimed that she could not reverse her vehicle as another construction vehicle had stopped behind her. At this point plaintiff claimed she began honking her horn, but Foster continued reversing and ultimately backed his vehicle into the front end of her vehicle.

2

On June 25, 2021, defendants filed an answer to plaintiff's petition. Defendants denied liability for plaintiff's injuries, asserting that she is instead to blame.

On December 22, 2022, defendants filed a motion for summary judgment, claiming that summary judgment should be granted because plaintiff did not possess any competent evidence of fault on the part of DOTD. Defendants claimed that the undisputed evidence showed that DOTD was operating in a mobile work zone on the day of the accident, and that a flag crew preceded and followed the heavy equipment that was cutting shoulders on Hwy. 2. Defendants noted that even plaintiff acknowledged seeing the heavy equipment working on the roadway.

Defendants further noted that only one lane of travel was open during the length of mobile work zone, but that plaintiff did not utilize that lane of travel, and instead pulled into an active work zone between a road grader and a backhoe, two extremely large pieces of construction equipment. Defendants claimed that Ms. Crow occupied a lane closed to the motoring public so that DOTD could perform the shoulder cutting, and she is therefore presumed to be at fault for the accident.

Defendants asserted that since there was no evidence that the mobile work zone represented an unreasonably dangerous condition and since plaintiff did not possess evidence to overcome the presumption of fault, summary judgment should be granted.

Defendants also asserted that since the motor grader is not considered a vehicle under Louisiana law, the requirement of La. R.S. 32:281(A) that a driver of a vehicle shall not back up unless the movement can be made with

reasonable safety does not apply. Defendants then asserted that even if the motor grader is found to be a vehicle, plaintiff still cannot prove that Foster backed up the grader without reasonable safety, since Foster testified that he checked behind him before reversing it.

On January 25, 2023, plaintiff filed a memorandum in opposition to defendants' motion for summary judgment. Plaintiff asserted that Foster chose to back up his vehicle when he knew he could not watch for traffic behind him and when he knew he did not have any flagmen at the intersection to divert traffic. Plaintiff also asserted that the motor grader qualifies as a motor vehicle pursuant to La. R.S. 32:1(48), but that even if it does not, Foster was negligent in reversing a large construction vehicle without being aware of traffic behind him.

On March 6, 2023, the trial court found that there were genuine issues of material fact and denied summary judgment.

A five-day jury trial commenced on March 27, 2023, and concluded on March 31, 2023. During *voir dire*, one juror, Ms. Patterson, testified that despite the evidence, she would not award millions of dollars in damages to plaintiff. Ms. Crow's counsel then asked Ms. Archie, another prospective juror, if she agreed with Ms. Patterson, and Ms. Archie answered in the affirmative.

Defendants' counsel then asked Ms. Patterson if she could follow the judge's instructions on how to evaluate the case and calculate what she deemed to be a fair and reasonable reward, to which she responded, "All his instructions." Plaintiff's counsel challenged Ms. Patterson for cause. The trial court denied the challenge for cause, finding that Ms. Patterson had

4

been rehabilitated by defendants' counsel. Plaintiff then used her last peremptory challenge on Ms. Patterson.

Notably, during the conference to empanel the jury, Ms. Crow's counsel accepted Ms. Archie as a juror without any objections or challenges. The trial court noted plaintiff's inconsistent stand regarding Ms. Patterson's and Ms. Archie's identical responses regarding their inability to award millions of dollars in damages.

At trial, Ms. Crow testified that she saw the construction zone on La. Hwy. 2 as she approached the intersection from La. Hwy. 143. She stated that she saw the backhoe to her right and the motor grader to her left, each with several workmen standing beside the equipment.

Ms. Crow said that before she arrived at the stop sign, she saw traffic traveling westbound in the open westbound lane. However, at her deposition 18 months before trial, she testified that she could not remember in which direction the traffic was flowing. At the scene of the accident, she informed the investigating officer, Union Parish Sheriff's Deputy Scott Barmore ("Dep. Barmore"), that she saw traffic traveling eastbound.

Ms. Crow testified at trial that at the intersection of La. Hwy. 143 and La. Hwy. 2, she stopped at the stop sign, turned left (eastbound) onto La. Hwy. 2, and got behind the motor grader that was moving very slowly. She did not recall seeing flashing hazard lights on the motor grader. She said she stopped when the equipment stopped. She testified that, after a while, the motor grader started backing up. She said that she then blew her horn, but the equipment kept coming and backed into her. Ms. Crow testified that she never heard the back-up alarm on the motor grader. She stated that she did

5

not attempt to avoid the accident by backing up because the backhoe was immediately behind her.

According to Dep. Barmore, Ms. Crow was initially moving with the flow of traffic, saw the backhoe in her peripheral vison, it scared her, and she pulled up behind the motor grader, which was in the eastbound lane. Once she was behind the motor grader, she said that she looked back up, but the equipment started reversing and hit her.

Dep. Barmore testified that when he arrived at the accident scene, he noticed that the motor grader was flashing yellow hazard lights, that it occupied the entire eastbound lane of La. Hwy. 2, and that there were no flagmen for drivers who approached from the intersection. He further testified that he did not observe any signage closing the eastbound lane of traffic to the motoring public.

Dep. Barmore could not recall whether Foster told him that he looked behind him before reversing. However, since both drivers agreed that Foster backed into Ms. Crow, Dep. Barmore did not ask any additional questions and completed his investigation, finding Foster to be at fault for the accident.

Deputy Barmore took 12 photographs at the scene showing that the accident happened near the mouth of the intersection of La. Hwy. 143 and La. Hwy. 2. The photographs showed Ms. Crow in the eastbound lane with her rear passenger-side tire further away from the white fog line than her front passenger-side tire, suggesting that she was still in the process of turning when the accident occurred. The photographs further suggested that she had not yet completed her turn when the motor grader backed into her,

as Ms. Crow's front tires were still turned to the left at the time of the accident.

Foster testified that the procession of the mobile construction crew was near the intersection when he needed to stop and back up the motor grader. He said that before he backed up, he stood up and turned around to look behind him to make sure it was safe before reversing. When he saw nothing behind him, he sat down, reversed the motor grader – which activated the back-up alarm – and watched the blade he controlled over the roadway shoulder to ensure that it did not hit signs at the edge of the shoulder. Foster stated that he did not feel the need to use his mirrors while reversing, as he had just looked to make sure nothing was behind him. He said that he concentrated on the blade over the roadway shoulder to his right.

Foster said that he had traveled in reverse only about five or six feet when he heard a noise and realized that he had hit a truck that was behind him. He did not hear the truck honk at him. Foster testified that the truck must have pulled up behind him after he had already started backing up, as he did not see it when he turned around to make sure nothing was behind him before reversing.

At the conclusion of defendants' case-in-chief, plaintiff moved for a directed verdict regarding her comparative negligence, claiming that there was no evidence supporting negligence of any kind by plaintiff. The trial court denied the motion.

At the jury charge conference, plaintiff's counsel sought to include in the jury instructions the portion of La. R.S. 32:1 that defines a vehicle and La. R.S. 32:281 which provides Louisiana law on reversing a vehicle. The

trial court refused these instructions and ruled that a motor grader is not a vehicle pursuant to Louisiana law.

The jury returned a verdict in favor of defendants, finding that they were not liable to plaintiff. On April 27, 2023, the trial court signed a written judgment in conformity with the jury's verdict. Plaintiff now appeals.

**DISCUSSION**

*Directed Verdict*

Appellant argues that the trial court erred in denying her motion for a directed verdict because no evidence was presented to establish that plaintiff breached any standard of care that caused or contributed to the accident. Plaintiff claims that she made a legal left turn at the intersection and came to a complete stop behind the motor grader before it started reversing and backed into her. Ms. Crow claims that the roadcrew should have controlled the intersection and that Foster should not have backed up if it could not safely have been done.

Appellees argue that the trial court did not abuse its discretion in denying Ms. Crow's motion for a directed verdict. Defendants claim that sufficient evidence demonstrated that Ms. Crow, a 17-year veteran school bus driver with a current commercial driver's license, failed to exercise the heightened duty of care required by La. R.S. 32:320.1(A) for construction zones. Defendants contend that Ms. Crow got nervous when she saw the backhoe and pulled up between two pieces of construction equipment that were flashing hazard lights and occupying the entire eastbound lane.

8

Defendants further contend that the evidence at trial showed that had Ms. Crow followed the eastbound traffic in the westbound lane – or the lane that was not occupied by construction equipment – she would have safely bypassed the construction zone. Defendants assert that a directed verdict was not warranted because the facts and evidence did not so overwhelmingly favor a verdict for plaintiff at the close of defendants' case such that reasonable jurors could not have arrived at a contrary result.

A motion for directed verdict is a procedural device available in jury trials to promote judicial efficiency. *Fields v. Walpole Tire Service, L.L.C.*, 45,206 (La. App. 2 Cir. 5/19/10), 37 So. 3d 549, *writ denied*, 10-1430 (La. 10/1/10), 45 So. 3d 1097. The motion is appropriately made at the close of the evidence offered by the opposing party and should be granted when, after considering all evidentiary inferences in the light most favorable to the movant's opponent, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant that reasonable jurors could not have arrived at a contrary conclusion. *Id*.; *see also* La. C.C.P. art. 1810. The trial court has much discretion in deciding to grant or deny the motion. *Fields, supra.*

The standard of review of a trial judge's granting of a directed verdict is whether, viewing the evidence submitted, reasonable men could not reach a contrary verdict. *Dowles v. Conagra, Inc*., 43,074 (La. App. 2 Cir. 3/26/08), 980 So. 2d 180. In addition, the appellate court must evaluate the propriety of a directed verdict in light of the substantive law related to the claims. *Watson v. Willis-Knighton Med. Ctr*., 47,295 (La. App. 2 Cir. 6/20/12), 93 So. 3d 855.

9

Louisiana law provides that a motorist's duty to exercise reasonable care includes the duty to keep her vehicle under control and to keep a proper lookout for hazards. *Williams v. City of Monroe*, 27,065 (La. App. 2 Cir. 7/3/95), 658 So. 2d 820. A motorist must use such diligence and care in the operation of her vehicle as is commensurate with the circumstances. *Collins v. Creighton*, 53,522 (La. App. 2 Cir. 9/23/20), 303 So. 3d 1114. A motorist's duty to look ahead and observe never ceases, and her failure to see what she could have seen by the exercise of due diligence does not absolve her from liability. *Id.* Pursuant to La. R.S. 32:320.1(A), a motorist possesses a heightened duty of care upon approaching a vehicle with active vehicular warning signals.

Here, the evidence supported the trial court's denial of Ms. Crow's motion for a directed verdict. Ms. Crow testified that as she approached La. Hwy. 2 from La. Hwy. 143, she saw the construction zone on La. Hwy. 2. She also saw the yellow backhoe to her right and the yellow motor grader to her left, each with several workmen standing beside it. Dep. Barmore testified that the motor grader was flashing hazard lights and occupied the entire eastbound lane. The motor grader also had a back-up alarm.

We find Ms. Crow's testimony inconsistent regarding how the accident happened as she approached the construction zone. At the scene, she told Dep. Barmore that traffic was flowing eastbound in the westbound lane and she got behind the last vehicle, got scared by the backhoe, pulled up behind the motor grader, looked up and the equipment was reversing. At her deposition, she testified that she did not recall in which direction traffic was flowing on La. Hwy 2. At trial, she testified that some traffic was flowing

10

westbound, she pulled up behind the motor grader that was moving forward in the eastbound lane, it stopped, she stopped, and after a while the motor grader started backing up. Conversely, Foster's testimony has been consistent throughout that he stood up, looked behind him, and made sure nothing was there before reversing.

The facts and evidence did not so overwhelmingly favor a verdict for Ms. Crow at the close of defendants' case such that reasonable jurors could not have arrived at a contrary result. Indeed, the jury's favorable verdict for defendants validates the trial court's ruling on the directed verdict. Accordingly, we find that the trial court did not abuse its discretion in denying Ms. Crow's motion for a directed verdict.

*Jury Instructions*

Ms. Crow further argues that the trial court erred when it failed to instruct the jury on La. R.S. 32:1 and La. R.S. 32:281 in a case where a motor grader was backing down a public highway and struck a stopped car. Plaintiff claims that La. R.S. 32:1(48) and 32:1(71) provide that a motor grader is treated as a vehicle when operated on a public roadway, and that the trial judge erred when he determined that a motor grader was not a vehicle. Ms. Crow also claims that La. R.S. 32:281 provides the law for vehicles backing down a public roadway, and that the trial judge erred when he failed to include the law applicable to backing a vehicle on a roadway.

Defendants argue that the trial court adequately instructed the jury regarding Foster's duty as the operator of the motor grader. Regardless of whether the motor grader was a vehicle or not, defendants claim that the trial court correctly instructed the jury that all motorists are under a duty to drive

11

prudently, keep a proper lookout, keep his or her vehicle under control, and look out for hazards. Defendants also note the jury was correctly instructed that the operator of heavy equipment has the duty to exercise reasonable care and shall not back up unless such maneuver can be made with reasonable safety. Defendants contend that these jury instructions fairly and reasonably pointed out the disputes and correctly stated the substance of the law for the jury to apply to the issue of driver negligence.

Louisiana C.C.P. art. 1792(B) mandates district courts to instruct the jury on the law applicable to the case before them. If the trial court omits an applicable, essential legal principle, its instruction does not adequately set forth the issues to be decided by the jury and may constitute reversible error. *Adams v. Rhodia, Inc.* 07-2110 (La. 5/21/08), 983 So. 2d 798.

Whether the trial court gave adequate jury instructions is reviewed under the manifest error standard. *Adams, supra.* Adequate jury instructions fairly and reasonably point to the issues in dispute and to the principles of law that the jury should apply to those issues. *Johnson v. First Nat'l Bank of Shreveport*, 00-870 (La. App. 3 Cir. 6/20/01), 792 So. 2d 33. Under the manifest error standard of review, appellate courts should not reverse unless the jury instructions were so erroneous or inadequate, so that the jury was prevented from reaching a verdict based on the law and the facts. *Martinez v. Schumpert Med. Ctr.*, 27,000 (La. App. 2 Cir. 5/10/95), 655 So. 2d 649.

The trial judge is under no obligation to give any specific jury instructions requested by either party. *Adams, supra*; *Johnson, supra*. However, the court must correctly charge the jury with the principles of law

12

applicable to the issues in dispute. *Johnson, supra*. Ultimately, the determinative question is whether the jury was misled by the instructions and prevented from dispensing justice. *Adams, supra*.

Regardless of whether the motor grader was a vehicle or not, the trial court instructed the jury that all motorists are under a duty to drive prudently, keep a proper lookout, keep his or her vehicle under control, and look out for hazards. Specifically, the trial court instructed the jury as follows:

> A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. The driver of an automobile is under a never ceasing duty to exercise reasonable care under the circumstances. The operator of heavy equipment shall not back up the same unless such movement can be made with reasonable safety. A reasonable standard of care is generally imposed upon operators of heavy equipment to ensure that the maneuver can be safely accomplished.

Accordingly, we find that the trial court's jury instructions correctly stated the substance of the law for the jury to apply to the issue of driver negligence. This assignment of error is without merit.

*Jury's Determination of Liability*

Appellant argues that the jury erred by assigning 0% fault to Foster, who backed the wrong direction on a Louisiana highway and struck a stopped car. Plaintiff claims that where a driver backs unsafely down a public roadway and strikes a stopped vehicle, the backing driver is the cause of the wreck and finding otherwise is clearly erroneous. Plaintiff asserts that without the proper legal instructions from the judge, the jury clearly erred by not assigning fault in what should have been a straightforward assessment of negligence while applying Louisiana traffic laws.

13

Appellees argue that the jury's finding that they were not liable to Ms. Crow was not manifestly erroneous because the jury's findings were reasonable in light of the record reviewed in its entirety. Defendants contend that the jury was presented with different accounts of how the accident happened from Foster and Ms. Crow. Since the jury found in their favor, appellants assert that the jury determined that based on the evidence presented, Foster's version of events was more believable. Defendants claim that the jury's credibility call as to which witnesses they chose to believe regarding Foster's negligence cannot be manifestly erroneous or clearly wrong.

Appellate courts review a jury's finding of fact based on the "manifest error" or "clearly wrong" standard. *Rosell v. ESCO*, 549 So. 2d 840 (La. 1989). If the jury's findings are reasonable in light of the record reviewed in its entirety, the appellate court may not reverse, even though it is convinced that had it been sitting as the trier-of-fact, it would have weighed the evidence differently. *Id*. To reverse a factfinder's determination, the appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court and that the record establishes that the finding is clearly wrong. *Stobart v. State through Dept. of Transp. & Dev.*, 617 So. 2d 880 (La. 1993).

Even if an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony. *Cole v. State Dept. of Public Safety & Corr.*, 01-2123 (La. 9/4/02), 825 So. 2d 1134. Moreover, where

14

the factfinder's conclusions are based on determinations regarding the credibility of the witnesses, the manifest error standard demands great deference to the trier of fact because only the trier of fact can be aware of the variations in demeanor and tone of voice that bear so heavily on the listener's understanding and belief in what is said. *Lowery v. St. Francis Med. Ctr.*, 54,513 (La. App. 2 Cir. 5/25/22), 339 So. 3d 770.

Where documents or objective evidence so contradict the witness's story, or the story itself is so internally inconsistent or implausible on its face, that a reasonable factfinder would not credit the witness's story, the court of appeal may well find manifest error, even in a finding purportedly based upon a credibility determination. *Rosell, supra*. But, where such factors are not present, and a factfinder's conclusion is based on its decision to credit the testimony of one of two or more witnesses, that conclusion can virtually never be manifestly erroneous or clearly wrong. *Rosell, supra*.

Juries are held in high regard, and their decisions are accorded great deference. *Eastman v. State Farm Mut. Auto. Ins. Co.*, 23-01107 (La. 5/1/24), 384 So. 3d 865, 872, *reh'g denied*, 23-01107 (La. 6/27/24). This deference recognizes that the right to a jury is statutorily protected. *See* La. C.C.P. art. 1731(A); *see also* La. C.C.P. art. 1736. Thus, overturning a jury's verdict that is reasonably supported by the record is, in essence, the denial of the parties' right to be heard and judged by the jury. *Eastman, supra*.

Based on our examination of the record, we cannot conclude that the jury was clearly wrong or manifestly erroneous in determining that Foster was not at fault for the accident. Ms. Crow approached an intersection

15

where a mobile construction zone was apparent and proceeded to place her vehicle five to six feet behind a motor grader and in front of a backhoe. In our view, this fell far short of Ms. Crow's duty to exercise reasonable care under the circumstances. On the other hand, Foster exercised reasonable care when he checked behind him to be sure no one was there before putting the motor grader in reverse.

On direct examination, Ms. Crow gave the following testimony as to how the accident occurred:

> As I approached that stop sign, right there by that store, the fire station was behind me. I got to the stop sign and I noticed that they was working on the road and I saw a tractor to my right down there. There was a man laying back on the tractor seat and there were several men standing out beside him. And I looked to my left, there was a tractor off – moving – moving forward in the east-bound lane down – on down up the road. There were several men standing out – just standing out down that way. So, when I got to the stop sign, I looked. There was nobody standing up there to tell me what to do, so I sit there for a while. And so, before I got there, I saw some traffic going west-bound. So, I said well I guess I supposed to ease on out here. So, I eased on out and as I eased on out, I looked toward the men to see if anybody maybe was gonna stop me and tell me I was in the wrong but they didn't so I just eased on along. So, the tractor was going on up the road and I wa – I was just easing on along behind the tractor and going real slow. So, the tractor stopped and I stopped. And it was a little while so, the tractor started back up and he start to backing up. So, as he started to back up, I thought that he would just be backing up a little and was gonna stop. But the tractor started coming – he kept backing up and I started blowing my horn because I was afraid that if I tried to back up I may back up in the tractor behind me cause I couldn't see what was going – if there was any traffic coming in the west-bound lane.

On cross-examination, Ms. Crow testified as follows:

Q.     Okay. And as you were at the stop sign, you saw traffic passing headed west-bound, correct?

A.     As I was approaching.

16

Q. Okay. Now, they were passing these tractors, correct?

A. Going on the west-bound lane.

Q. Correct. So, their headed towards Sterlington.

A. No. They were headed toward Farmerville.

Q. Oh. Okay.

A. The traffic – when I arrived.

Q. Do you remember giving your deposition on November 8th, 2021?

A. Yes.

Q. And in that deposition, didn't you testify that as you approached the stop sign, you do not recall which direction the traffic was going?

A. That's when I arrived. When I arrived at the stop sign there was no traffic going. There wasn't any traffic.

Q. All right.

A. I didn't see any traffic.

Q. Didn't you testify in your deposition that as you approached the stop sign, you remembered seeing the traffic?

A. I remember seeing the traffic as I was approaching the stop sign.

Q. Correct. And then you were asked which direction the traffic was going, correct?

A. Correct.

Q. And you said you did not remember, correct?

A. At that time, I may have not.

Q. So, you – you now remember a year and a half later the traffic was headed towards Farmerville?

17

A.    Yes.

Ms. Crow's trial and deposition testimony, inconsistent as it was, represented a departure from the story she told immediately after the accident, according to Dep. Barmore's testimony:

Q.    Okay. And that after being behind that flow of traffic, she caught sight of the backhoe in her peripheral vision, isn't that correct?

A.    Correct.

Q.    And the sight of that backhoe startled her, is what she told you.

A.    That's what she told me.

Q.    Scared her.

A.    Right.

Q.    And when she got scared she got behind the motor grader.

A.    Yes.

The jury was presented with different accounts of how the accident happened – a consistent one from Foster and several inconsistent ones from Ms. Crow.  Finding in favor of defendants, the jury evidently determined that Foster's account was more credible.

The jury's credibility call as to which witnesses they chose to believe regarding Foster's negligence cannot be manifestly erroneous or clearly wrong.  The jury had reasons to question Ms. Crow's credibility, as her account of the accident differed from the date of the accident, to the time of her deposition, to the time of trial.  The record demonstrates that a reasonable factual basis exists for the jury's finding that Foster was the more credible witness.

18

The version of events surrounding this accident that the jury chose to believe was based on Foster's testimony as well as Ms. Crow's own statements to the investigating officer after the accident. We do not find this version of events was so internally inconsistent or implausible on its face such that a reasonable factfinder would not have believed it. Accordingly, we do not find that the jury's verdict was manifestly erroneous or clearly wrong.

*Challenge for Cause*

Finally, Ms. Crow argues that the trial court erred when it denied her challenge for cause against a biased juror who refused to award high damages no matter what the evidence proved. Ms. Crow claims that this juror was never unequivocally rehabilitated by defendants, and that as a result of the trial court's error, she was forced to exercise her last peremptory challenge. Ms. Crow claims that this error fundamentally altered the composition of the jury.

Defendants assert that the trial court did not abuse its discretion in denying plaintiff's challenge of the juror Ms. Patterson for cause. Defendants note that Ms. Patterson repeatedly stated that if the evidence established that plaintiff was entitled to compensation, she could be fair and impartial in awarding damages, just not millions of dollars. Defendants further note that when DOTD's counsel asked Ms. Patterson if she could follow all of the judge's instructions, she agreed that she could.

Defendants also note that 11 jurors were already empaneled when plaintiff exercised her last peremptory challenge to excuse Ms. Patterson, and that plaintiff did not challenge any other prospective jurors for cause

before the twelfth juror was selected. Since there was no need for plaintiff to exercise any additional peremptory challenges before the jury was fully empaneled, defendants claim that the use of her last peremptory challenge on Ms. Patterson did not prejudice her in any way.

A trial judge is vested with broad discretion in regulating and supervising *voir dire* and in ruling on challenges. *Riddle v. Bickford*, 00-2408 (La. 5/15/01), 785 So. 2d 795. The court's ruling governing the selection of a jury will be reversed only when a review of the entire *voir dire* demonstrates that the trial court abused its discretion. *Simms v. Progressive Ins. Co.*, 38,804 (La. App. 2 Cir. 9/29/04), 883 So. 2d 473, *writ denied*, 04-2871 (La. 1/28/05), 893 So. 2d 78.

A party who has exhausted all of her peremptory challenges before the completion of the jury panel is entitled to appeal a ruling denying a challenge for cause. *Wyatt v. Hendrix*, 43,559 (La. App. 2 Cir. 11/5/08), 998 So. 2d 233. The party must show: (1) the trial judge erred in refusing to maintain the challenge for cause; and (2) he exhausted all of his peremptory challenges. *Id*. The aggrieved party need not show that injury resulted from the court's ruling that forced him to accept the challenged juror. *Id*.

A juror may be challenged for cause when she has formed an opinion in the case or is not otherwise impartial, regardless of the cause of the bias. La. C.C.P. art. 1765(2); *Simms*, 883 So.2d at 479. A trial judge's refusal to excuse a prospective juror on the ground that she is not impartial is not an abuse of discretion where, after further inquiry or instruction (rehabilitation), the potential juror demonstrates a willingness and ability to decide the case impartially according to the law and the evidence. *Id*.

Here, we do not find that the trial court abused its discretion in refusing to excuse Ms. Patterson for cause. Ms. Patterson did not say she would be unable to award any damages, and even expressed that she would follow the judge's instructions regarding how damages should be calculated. We also observe the inconsistency in plaintiff's position on this issue considering she accepted another juror without any challenges or objections who gave an identical response to Ms. Patterson on the damages question.

Furthermore, we find it significant that the jury never decided the issue of damages because they found that defendants were not liable to Ms. Crow. Prejudice cannot result from the denial of Ms. Crow's challenge for cause of a potential juror whom she claims was biased on damages when the jury never determined damages. This assignment of error is without merit.

## CONCLUSION

For the foregoing reasons, we affirm the trial court's denial of Ms. Crow's motion for a directed verdict and the jury's verdict finding that defendants are not liable to her. All costs of this appeal are assessed to Ms. Crow.

**AFFIRMED.**

**STONE, J., dissenting.**

The paramount issue in this case is the trial court's failure to adequately instruct the jury on the applicable law specifically, defining the term "motor vehicle." The trial court improperly declared that the motor grader was not a vehicle as clearly defined in La. R.S. 32:1(107) which provides:

> "*Every* device by which persons or things may be transported upon a *public highway* or bridge, except devices moved by human power or used exclusively upon stationary rails or tracks."

The trial court gave the following instructions:

> "A motorist proceeding in compliance with law has the right to assume that other motorists will observe the law and can indulge in that assumption until he sees or should see that another motorist has not observed or is not going to observe the law.
> All motorists are under a duty to drive prudently, which includes a duty to keep a proper lookout. This obligation includes a motorist's normal duty to keep his/her vehicle under control and to maintain a proper lookout for hazards. A motorist must use such diligence and care in the operation of his vehicle as is commensurate with the circumstances. The driver of an automobile is under a never ending duty to exercise reasonable care under the circumstances.
> The operator of heavy equipment shall not back up the same unless such movement can be made with reasonable safety. A reasonable standard of care is generally imposed upon operators of heavy equipment to ensure that the maneuver can be safely accomplished."

**Overview**

At all times pertinent thereto, Ms. Crow was a motorist proceeding in compliance with the law and she had a right to assume that other motorists, including Foster, would observe the law. Furthermore, she was driving her vehicle under that assumption until she realized that Foster was not, but by then it was too late. Ms. Crow, without any indicators, such as traffic cones, signs, flagmen, law enforcement directing traffic, etc., was maintaining proper lookout while driving in her proper lane of travel in the proper direction in which she was headed. She breached no duty as a motorist. In

1

fact, upon initial investigation, law enforcement determined that Ms. Crow did not violate any traffic law.

**Jury Instructions**

Jury charges should be framed in a language which reduces the possibility of confusing the jury.[1] The judge may use semantics that may be appropriate for that purpose.[2] However, this does not appear to be a case of simple semantics. In the jury instructions, the trial court used the terms motorist, driver, operator, vehicle, automobile, road grader and heavy equipment. The trial court seems to have conflated and interchanged all of these terms and thereafter, defined a motor grader as a non-vehicle when providing the jury instructions. The standard of care required — whether a motorist is driving a car, a truck or a motor grader — is the same when driven on a public road. By his own admission, Foster failed to utilize his mirrors, and the jury deemed his act of standing *once* (presumably to see if anyone or anything was behind him) sufficient. Had the proper jury instructions been given, surely, the jury would have known that Foster's action required more than just standing.

La. R.S. 32:281(A) provides the standard of care for backing a vehicle; it states:

> "The driver of a *vehicle* shall not back the same unless such movement can be made with reasonable safety and without interfering with other traffic."

---

[1] *Cuccia v. Cabrejo,* 429 So. 2d 232 (La. Ct. App. 5th Cir. 1983; *Arnouville v. Joiner Enterprises, Inc.,* 423 So. 2d 1246 (La. Ct. App. 5th Cir. 1982).

[2] *Kolmaister v. Connecticut General Life Ins. Co.*, 370 So. 2d 630 (La. App. 4th Cir. 1979).

A motor grader is driven by people performing construction duties on public roadways and highways and is not used exclusively upon stationary rails or tracks. Pursuant to Louisiana law, a motor grader is indeed a motor vehicle; and therefore, La. R.S. 32:281(A) is applicable and the jury should have been so instructed.

**Conclusion**

Ms. Crow did not back into herself, and the jury could not have reasonably found her 100% liable for the collision had the motor grader been defined as a motor vehicle. The trial court's use of the term "equipment" rather than "vehicle" caused the jury to compartmentalize the standard of care placed on all motorists (including drivers of "heavy equipment") on the public roads, which is incorrect.

Adequate jury instructions fairly and reasonably point to the issues in dispute and to the principles of the law that the jury should apply to those issues.[3] If a trial court omits an applicable, essential legal principle, its instruction does not and cannot adequately set forth the issues to be decided by the jury.

When deciding whether an error in an instruction constitutes reversible error, this court must determine if there was a likelihood that the instruction probably contributed to the jury verdict.[4] In my view, this failure of the trial court to properly instruct the jury constitutes reversible error. La. R.S. 32:281 delineates the law applicable to a backing vehicle on a roadway. The verbiage used by the trial court ultimately decided the case. After the presentation of evidence and arguments in a case, the trial court must instruct the jurors on all law applicable to the cause submitted to them. La.

3

C.C.P. art. 1792. A motor grader is a vehicle under Louisiana law and *any* jury instruction to the contrary is erroneous.

Respectfully, I dissent.

---

[3] *Johnson v. Nat. Bank of Shreveport*, 2000-870 (La. App. 3 Cir. 6/20/01), 792 So. 2d 33, 52; *Adams v. Rhodia, Inc.*, 2007-2110 (La. 5/21/08), 983 So. 2d 798, 805.

[4] *Este v. Roussel*, 2001-1859 (La. App. 4 Cir. 11/6/02), 833 So. 2d 999